UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

ABSOLUTE NEVADA, LLC,

                *Plaintiff,*                 1:19-cv-11479 (PKC)

      -against-

GRAND MAJESTIC RIVERBOAT
COMPANY, LLC,

                *Defendant.*

-------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CIVIL CONTEMPT AGAINST JOSEPH L. BAER

HILL, BETTS & NASH LLP
James D. Kleiner
Adam M. Wernicke (*pro hac vice*)
14 Wall Street, Suite 5H
New York, New York 10005
*Attorneys for Absolute Nevada, LLC*
(212) 839-7000
jkleiner@hillbetts.com
awernicke@hillbetts.com

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS .....................................................................................2

    A.    Conduct Leading to TRO and Arbitration ...............................................2

    B.    Urgent Relief Sought in Arbitration and Court.......................................5

    C.    GMRC and Baer, by Counsel, Admit their Claim is One and the Same and Arbitrable ........................................................................................6

    D.    The Terms of the Order are Specific, Clear and Unambiguous..............7

    E.    Baer's Blatant Disregard of the Order ...................................................7

ARGUMENT .........................................................................................................9

    I.    This Court's Order is Clear and Unambiguous.....................................10

    II.    There is Clear and Convincing Evidence that Baer not only Failed to Comply with Numerous Provisions of the Order, but Did so Maliciously to Interfere with AN's Chartering, Sale, and Disposal of the Vessel....................................................................................13

    III.    Manifestly, Baer has not Made Any Reasonable or Diligent Attempt to Comply with the Terms of the Order................................................15

    IV.    Plaintiff is Entitled to the Following Relief.........................................16

        A.    Baer Should Be Held in Civil Contempt and Sanctioned for His Willful and Malicious Notice of Claim of Lien and Other Acts in Direct Violation of this Court's Order.........................................16

        B.    Immediately Withdraw any Notice of Claim of Lien Against the Vessel..................................................................................17

        C.    For Every Day of Non-Compliance a Daily Fine Should Be Imposed......17

        D.    Attorneys' Fees Are Warranted for Baer's Willful Contempt...................18

CONCLUSION.....................................................................................................19

**Cases**

*Aspira of New York v. Bd. Of Educ. of New York*, 423 F. Supp. 647 (S.D.N.Y. 1976) .............................13

*Cardell Financial Corp. v. Suchodolski Associates, Inc.*, 2012 U.S. DIST. LEXIS 188295 (S.D.N.Y. July 17, 2012), adopted as judgment 896 F. Supp. 2d 320 (S.D.N.Y. 2012) .............................9, 12, 13

*Casale v. Kelly,* 710 F. Supp. 2d 347 (S.D.N.Y. 2010) .............................................................13

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ..................................................................9

*First City, Texas-Houston, N.A. v. Rafidain Bank*, 68 F. Supp. 2d 377 (S.D.N.Y. 1999) .........................17

*GMA Accessories, Inc. v. Eminent, Inc.*, 2008 U.S. Dist. LEXIS 55107 (S.D.N.Y. 2008) .......................18

In re *Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985)...........................................................10

*In re Lennon*, 166 U.S. 548, 17 S. Ct. 658 (1897) .................................................................12

In re *Martin-Trigona*, 732 F.2d 170 (2d Cir. 1984) ...............................................................9

*King v. Allied Vision, Ltd.,* 65 F.3d 1051 (2d Cir. 1995) .........................................................17

*Levin v. Tiber Holding Corp.*, 277 F.3d 243 (2d Cir. 2002) .................................................9, 13

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949) .......................................................15

*N.Y. State National Organization for Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989) ...............................9

*Paramedics Electro Medicina Comercial, Ltda. v. GE Medical Systems Info Techs, Inc.*, 369 F.3d 645 (2d Cir. 2004)...........................................................................................................9

*Perez v. Danbury Hospital*, 347 F.3d 419 (2d Cir. 2003)..........................................................9

*Playboy Enters., Inc. v. Chuckleberry Publ'g, Inc.*, 939 F. Supp. 1032 (S.D.N.Y. 1996).........................16

*Securities and Exchange Commission v. Blizerian*, 729 F. Supp. 2d 1 (D.D.C. 2010)...............................17

*Shillitani v. United States*, 384 U.S. 364 (1966) ................................................................9

*Spectacular Venture v. World Star Intern.*, 927 F. Supp. 683 (S.D.N.Y. 1996).......................................17

*U.S. v. Mongelli*, 2 F.3d 29 (2d Cir. 1993)......................................................................17

*Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir. 1979)....................................16

**Rules**

Federal Rules of Civil Procedure 65(d)(2)........................................................................10

## INTRODUCTION

Plaintiff respectfully submits this memorandum of law, with accompanying declarations of its Managing Director, Vicki L. Porter and counsel, James D. Kleiner in support of its motion for civil contempt against Captain Joseph L. Baer ("Baer") individually and as President and sole shareholder of defendant, Grand Majestic Riverboat Company ("GMRC"), based on Baer's malicious disregard of the Stipulation and Order, so ordered and entered, on January 6, 2020 (Doc. 19) (the "Order").

Baer, a veteran *pro se* litigator, claims to be judgment proof and beyond the jurisdiction and reach of the Court and its decree. Yet, the Order, entered with his full knowledge and consent, after review by counsel: (1) enjoined not just GMRC, but "*its officers, directors, shareholders, agents, employees, servants, attorneys, and all persons in active concert or participation with them*" from further harming or interfering with plaintiff's business and specifically plaintiff's vessel, M/V AMERICANA (the "Vessel"); (2) mandated that any and all of their claims "in any way related to…the Vessel" shall be "limited to damages" (as specifically agreed before the arbitrators, in order to preclude what Baer is now attempting and threatening, namely, to lien, arrest and interfere with the Vessel's sale or charter); (3) decreed that all such claims be "arbitrated in the pending New York arbitration"; and (4) expressly provided that "the Court retain[] jurisdiction as may be needed in aid of said Arbitration and/or to enforce this Stipulation and Order" Kleiner Decl. Exh. 1.

As the arbitrators, in their March 25, 2020 Partial Final Award ("Award") observed:

> It became clear that GMRC, on the eve of January the 7th hearing before Judge Castel of the SDNY and having just been directed by this Panel on January 3rd to deposit $20,000 in cash security with the SMA for arbitrators' fees, appreciated the lack of merit in its legal position and therefore entered into the Stipulation with AN on January 6th *thereby resolving all requested relief by AN in its favor*.

(Emphasis added). The Award is Exhibit 2 to Kleiner Decl.

However, Bear's recent conduct demonstrates that he has been deluding everyone. His assurances to the arbitrators and this Court and his consent to the terms of the Stipulation and Order were a sham. Evidently, he never gave up on his threatened campaign to harm plaintiff's business and embroil plaintiff in endless litigation in retaliation for the loss, in October 2020, of GMRC's charter (the "Charter") of the Vessel. Heedless of the Order, he has been waiting for the opportune time to inflict maximum damage on plaintiff, just when the Vessel has been refurbished and is now likely to be sold.

This regrettable circumstance adds urgency to the relief sought in this motion.

## STATEMENT OF FACTS

The facts are more fully set forth in the accompanying declarations of Vicki L. Porter ("Porter Decl.") and James D. Kleiner (Kleiner Decl.), as well as the very detailed verified complaint ("Ver. Compt."), with exhibits 1-21 thereto and other filings in the docket of this action.

### A.    Conduct Leading to TRO and Arbitration

Baer, as President, director, and sole shareholder of GMRC, persuaded investors to put up funds, including a security deposit, required for GMRC to charter the AMERICANA from plaintiff, at a rate of hire of $3,000 per day, and shifting to GMRC all the costs of maintaining, crewing, insuring and operating the Vessel, including the cost of obtaining a U.S. Coast Guard Certificate of Inspection, to permit the Vessel to operate. The parties' September 24, 2019 Charter is Exhibit 1 to the Ver. Compt. The venture was based on Baer's representation that he could profitably operate the Vessel and had a party willing to charter the Vessel from GMRC. Porter Decl. ¶6. However, the Charter was automatically cancelled on or about October 18, 2019 (the latest contractual deadline), when GMRC failed to comply with preconditions, including Baer's

refusal to take delivery of the Vessel, his refusal to grant any extension of time and his refusal even to respond to plaintiff's offer to revive the Charter, followed, on November 6, 2019, by Baer instructing the escrow agent to return the Charter security deposit to his investors. *Id.* ¶¶3-5.

Porter had meanwhile concluded that Baer had misrepresented that he had lined up a willing charterer for the Vessel and/or that his investors had gotten cold feet and withdrawn. Porter Decl. ¶6. In any event, Baer blamed plaintiff for the lost Charter, relying on the existence of a tiny punch hole that had conveniently and mysteriously appeared in the Vessel's hull, during Baer's visit to the Vessel as a "visitor" during October 2019 (and which Baer reported to the U.S. Coast Guard). *Id.*

Having lost faith in Baer's willingness and ability to revive the Charter, Porter decided to look for other charterers. Through an intermediary, plaintiff responded to interest from Lockheed Martin to charter the Vessel for in-port accommodations (for which no sailing was required), under a U.S. Navy contract. Porter Decl. ¶7(4).

Baer himself had negotiated GMRC's failed Charter with plaintiff (which he claimed to have written). Porter Decl. ¶4; Porter Decl. Exh. 1. Therefore, as of November 6, 2019, Baer was assuredly aware: (1) that the Charter was at an end; and (2) that any claim which GMRC might have relating to the Vessel was contractually limited to a claim for damages and did not entitle it to restrict plaintiff's use or marketing of the Vessel. In fact GMRC, in Clause 27 of the Charter, had expressly waived: (a) any claim of a lien or security interest in the Vessel; (b) the right to seize the Vessel; and (c) any right to specific performance of the Charter. *Id.* ¶¶11-12.

Nevertheless, Baer persisted in efforts to blame plaintiff. He insisted that plaintiff and Porter were somehow obligated to make the Vessel available to GMRC. Baer became increasingly

insistent and on November 20, 2019, sent the following menacing text to Porter's phone, in which he stated:

> This is getting ugly. Either we come to terms or I file an injunction and sue you for the ship. You made a deal. I'm holding you to it. You can try to throw whatever lawyers you want at me. This is a small industry and I already know who you have been talking to. We either work with each other or against. Your choice. I have nothing to lose.

Porter Decl. ¶7(1); Porter Decl. Exh. 1. Evidently, Baer (formerly of the U.S. Coast Guard) had used his industry contacts to spy on plaintiff's activities and was aware that plaintiff was talking to Lockheed about a new charter. On November 25, 2019, Baer emailed Lockheed, causing it to break off negotiations with plaintiff for another charter, falsely representing and threatening: (a) that GMRC "holds a Bareboat Charter/Purchase Charter for [the Vessel]"; (b) that AN had failed to abide by the terms of the contract in delivering the vessel in seaworthy condition; (c) that GMRC had decided to move forward with litigation against AN, including obtaining a TRO "*barring [AN] from chartering or selling the ship to any entity other than [GMRC] and injunctive relief*" to *specifically enforce* the Charter between AN and GMRC; and (d) threatening Lockheed that any Charter for the Vessel outside of GMRC's Charter would be improper and a "breach of professional ethics" for Lockheed to work "in concert" with AN. Porter Decl. ¶7; Ver. Compt. 46.

On or about December 6, 2019, Baer sent Porter his personal invoice, in the sum of $17,095.00, for 21 days of alleged "professional services" relating to M/V AMERICANA. Porter Decl. ¶8; Porter Decl. Exh. 2. Baer had visited the Vessel staring in or around October 3, 2019. However, he represented that such visit was for purposes of GMRC's Charter. At the time, GMRC had not taken delivery of the Vessel. Neither Baer nor GMRC had any right to be on board without plaintiff's consent. The scope of Baer's visit was strictly limited to that of a "visitor." Baer, as "visitor," was required to sign an indemnity form as a condition to being allowed on board. Porter

Decl. ¶9; Porter Decl. Exh. 4. Baer's alleged claim was and is a sham, which Baer concocted as a pretext for his threatened lien and arrest of the Vessel. *Id.*[1]

GMRC also misrepresented on social media that "Grand Majestic is proud to announce the addition of the MV Americana as the newest addition to our growing fleet." Porter Decl. ¶10, Porter Decl. Exh. 5.

### B. Urgent Relief Sought in Arbitration and Court

On or about December 5, 2019, after plaintiff sought expedited injunctive relief against GMRC in arbitration, Baer flatly denied that GMRC was obligated to arbitrate. Claiming to be an "expert *pro se*" litigator, he threatened to embroil plaintiff in endless and costly litigation for which there would be no compensation as GMRC and Baer were without funds and judgment proof.

Plaintiff was therefore compelled to commence the instant action, by order to show cause and with the Court's temporary restraining order (Doc. 7), to restrain GMRC, its officers, directors and shareholders from: "Threatening arrest or seizure of the M/V AMERICANA and other actions in violation of defendant's contract, including, its agreement to arbitrate…."

---

[1] As discussed, below, Baer has recently used this same claim, now redefined as his "seaman's wage claim," as the basis for his recent "Notice of Claim of Lien," which he emailed to Porter on June 15, 2020. Port Decl. ¶8, Porter Decl. Exh. 3.

### C. GMRC and Baer, by Counsel, Admit their Claim is One and the Same and Arbitrable

At the January 3, 2020 conference with the arbitrators, GMRC appeared by counsel, who confirmed the following on the record (see Kleiner Decl. Exh. 3):

- That GMRC would claim damages in the arbitration, "*including, but not limited to the time that Capt. Baer spent on Americana* to assist AN in getting the Americana seaworthy and obtaining a Certificate of Inspection from the Coast Guard", Tr. 6 (Lines 11-19) (despite Baer's recent protestations that his current claim is "personal" and "separated" from GMRC's claim, the records confirm that this "services" claim is the *same* claim and in the *same* amount as referred to in his June 15, 2020 Notice of Lien for "seaman's wages," see, Porter Exhibits 2 and 3);

- That *"Mr. Baer's claim for services" is subject to arbitration* (Counsel: "Yes") Tr. 6 (Lines 20-25) and Tr. 7 (Line 3);

- That Baer's "personal" claim for such "services" is *one and the same* as GMRC's corporate claim for the same services because as counsel admitted, Baer "is the sole proprietor" of GMRC (counsel admitted that Baer was asserting his claim both personally "and through Grand Majestic Riverboat Company"), Tr. 7 (Lines 5-10); (*this is evidence that when it suits him, Baer disregards the corporate separateness of his business, GMRC*);

- That to guarantee AN's freedom to charter or sell the Vessel, no arrest or other remedy was being or would be sought "other than a claim for damages for breach of charter party," Tr. 22 (Lines 2-12); (as above, counsel had by then made it clear that one way or another, GMRC's claims for damages" *included* Baer's personal claim and that all were arbitrable);

- That "Absolute Nevada can enter into any charter party it wants and/or sell the Vessel if it wants pending the arbitration," *id.*; Tr. 5 (Lines 18-21);

- That after "conferring with the client" counsel was willing to put "so ordered" on the Stipulation, so that AN could go about its business with the Vessel "free and clear," Tr. 20 (Lines 15 and Lines 21-24).

### D. The Terms of the Order are Specific, Clear and Unambiguous

The parties' Stipulation and Order and the resulting Order, as entered, is very detailed, clear and unambiguous. The Order, in eight numbered paragraphs: (1) enjoined not only GMRC, but "its officers, directors, shareholders, agents, employees, servants, attorneys, and all persons in active concert or participation with them (collectively referred to as 'GMRC')" from further harming or interfering with plaintiff's business and specifically plaintiff's vessel, M/V AMERICANA; (2) mandated that any and all of their claims "in any way related" to the Vessel shall be "limited to damages" (as specifically agreed before the arbitrators, in order to preclude the very lien claim now asserted by Baer, which could interfere with the Vessel's sale or charter); (3) stated the agreement (of not only GMRC, but "its officers, directors, shareholders, agents, employees, servants, attorneys, and all persons in active concert or participation with them," a broad definition which clearly encompasses Baer) that any claims "*in any way related" to the Vessel* must be "arbitrated in the pending New York arbitration"; and (4) as agreed by Baer and GMRC, expressly provided that "the Court retain[] jurisdiction as may be needed in aid of said Arbitration and/or to enforce this Stipulation and Order." Kleiner Decl. ¶11; Kleiner Decl. Exh. 1.

### E. Baer's Blatant Disregard of the Order

Nevertheless, Baer has completely disregarded the terms of the Order and he has continued to maliciously cause harm to plaintiff's business operations. Porter Decl. ¶20. Among other things:

(1) despite the Order to refrain from harming plaintiff, Baer has continued to stalk the Vessel, waiting and watching for an opportunity to maximize the damage that he causes to plaintiff; (2) thus, on June 15, 2020, just days after the Vessel completed its refurbishment and the U.S. Coast Guard issued its Certificate of Inspection, Baer made good on his previous threats when he emailed to Porter a "Notice of Claim of Lien" against the Vessel, Porter Decl. Exh. 3 (for his re-characterized personal "Seaman's Wages" claim), so as to impede plaintiff's latest efforts to sell or charter the Vessel, Porter Decl. ¶20; (3) despite the Order to withdraw and remove harmful statements or postings, he has evidently refused to withdraw or remove his earlier claims, made to Lockheed Martin that the Vessel is chartered by GMRC and/or (until June 29, 2020, when he appears to have removed the post, in response to the Court's leave for this motion) on social media that the Vessel "is the newest addition to our growing fleet," *Id.;* Porter Decl. Exh. 5; (4) as outlined in the Kleiner Declaration, in response to plaintiff's Letter Motion to the Court, Baer has made multiple threats by phone and email to plaintiff's counsel, including threatening to bring down litigation them and on AN and to report counsel for imagined ethical violations, Kleiner Decl. ¶7(4); Kleiner Decl. Exhs. 4-6; (5) in January and February, 2020, he failed comply with the directions of the arbitrators and refused to cooperate in the parties' arbitration, Kleiner Decl. ¶7(5); (6) most recently, he has denied that his personal services claim is subject to arbitration, despite his and GMRC's counsel agreeing to this, on the record, before the arbitrators and despite his consenting to the obligation imposed by the Order that any and all claims "in any way relating to the Vessel" shall be "limited to damages" and "arbitrated in the pending New York arbitration" *Id.* at ¶7(6); and (7) Baer even denies the jurisdiction of the Court, despite the Order's express provision that "the Court retain[] jurisdiction as may be needed in aid of said arbitration and/or to enforce this Stipulation and Order." *Id.* at ¶7(7).

Counting the failure to perform the Charter and Baer's sabotage of the Lockheed charter, Baer and GMRC wrongful conduct has caused AN millions of dollars of damage, which it will likely never recover. Porter Decl. ¶2.

## ARGUMENT

This Court has the "inherent power to enforce compliance with [its] orders through civil contempt." See In re *Martin-Trigona*, 732 F.2d 170, 173 (2d Cir. 1984) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *Cardell Financial Corp. v. Suchodolski Associates, Inc.*, 2012 U.S. DIST. LEXIS 188295, at 144-147 (S.D.N.Y. July 17, 2012), adopted as judgment 896 F. Supp. 2d 320, 322 (S.D.N.Y. 2012). The power to enforce compliance with a lawful order is not granted by a rule or statute, but rather, it is a necessary control vested in the district court, thereby allowing it to manage its own affairs to achieve an expeditious and orderly disposition of cases. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). As such, a court may hold a party in civil contempt if: "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." See *N.Y. State National Organization for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989). To be clear and convincing, the evidence need not be "unequivocal." The movant must demonstrate that the defendant "has likely violated one or more of the court's orders in specified ways." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002); *Cardell Financial Corp.*, 146. While the movant must demonstrate at least that the accused "has not diligently attempted to comply in a reasonable manner," *Perez v. Danbury Hospital*, 347 F.3d 419, 424 (2d Cir. 2003), the noncompliance need not be willful. *Paramedics Electro Medicina Comercial, Ltda. v. GE Medical Systems Info Techs, Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

*Cardell Financial Corp.*, 146. Thus, in civil contempt proceedings it is not necessary to demonstrate intent on the part of the defendant to violate the order.

While a court cannot enjoin the world at large, under Federal Rules of Civil Procedure, Rule 65(d)(2), non-parties such as Baer can be bound by an order. The Rule states that those bound include:

> Only the following who receive actual notice of [the order] by personal service *or otherwise*: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

*Cardell Financial Corp.*, 136-139 (non-party, sole owner of corporation held to be bound by arbitration injunction as confirmed in district court judgment).

The facts above and the declarations of Porter and Kleiner amply meet the standards for contempt. Indeed, they demonstrate that GMRC and Baer have maliciously violated the numerous terms and restrictions of the Order.

## I.      This Court's Order is Clear and Unambiguous

A court order is clear and unambiguous where it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." See *Terry*, 886 F.2d at 1352 (quoting In re *Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985)).

The detailed provisions of the Order were discussed with the arbitrators and agreed to by counsel. The specific provisions of the Order made it abundantly clear to Baer both: (1) that the Order applies not only to GMRC, but to Baer himself (GMRC, "its officers, directors, shareholders, agents, employees, servants, attorneys, and all persons in active concert or participation with them (collectively referred to as 'GMRC')"; and (2) precisely the conduct that is being proscribed and required.

Indeed, AN's Application for Urgent Relief to the arbitrators sought "injunctive relief to enjoin GMRC and Capt. Baer." See Award, Kleiner Dec. Exh. 2, p. 1, item 2. The issue in arbitration was whether GMRC's claims (which by then counsel had confirmed included Baer's personal "services" claim) could be restricted to "damages," so as to leave the Vessel free and clear of any claim of lien, specific performance, or other "cloud" which could in any way hinder AN in selling or marketing its Vessel. Arbitrator Shaw, a former president of the Society of Maritime Arbitrators of New York, put the issue as follows:

> The real question, it seems to me, [is] whether Grand Majestic is willing to stipulate to restricting its claim to a claim for damages, allowing the owner to market the ship to someone else….I think we need clarity on that point.

Tr. 19 (Lines 3-8, 20-21).

The arbitrators (all experienced New York maritime lawyers) considered the Order (referred to in their Award as "Stipulation") to have been sufficiently clear as to have resolved "all" relief requested by AN "in its favor." Kleiner Decl. Exh. 2, p. 5.

The terms of the Order clearly apprised Baer that his above-described conduct violated the express restraints and requirements of the Order. See, discussion in Section II, below.

It is manifestly disingenuous for Baer, in his recent communications, to pretend that he can escape the consequence of his many violations of the Order by re-characterizing as a "seaman's wage" lien claim, his baseless personal "services" claim (which his counsel stated for the arbitration record was included among the claims that were subject to arbitration, all of which were "limited to damages" so as to enable plaintiff to dispose of its Vessel "free and clear" of any liens or other impediment). Regardless of this canard, Baer is guilty of numerous other violations of the Order. See discussion in Section II, below.

It is equally frivolous for Baer to contend that he is beyond the personal jurisdiction of the Court, given the multiple jurisdictional predicates, to wit: (1) counsel's admission, on the record,

that Baer agreed to arbitration of his personal claim in the Southern District of New York, thereby subjecting himself to this Court's personal jurisdiction; (2) the fact that all claims (GMRC's and Baer's) in the arbitration were modified by agreement which was embodied in the Stipulation and Order and reduced to an Order of this Court, by consent, thereby waiving any jurisdictional objections of GMRC, and in turn its officers, directors, etc. et al., including Baer; (3) the additional agreement of GMRC, its officers, directors, etc. et al., including Baer himself, in the Stipulation and Order that "the Court retain[] jurisdiction as may be needed in aid of said Arbitration and/or to enforce this Stipulation and Order," *id.* ¶2[2]; (4) that Baer's "personal" claim for such "services" is, according to the arbitration record, one and the same as GMRC's corporate claim for the same services because, as counsel admitted, Baer "is the sole proprietor" of GMRC (counsel admitted that Baer was asserting the claim both personally and through Grand Majestic Riverboat Company), Tr. 7 (Lines 5-10); and (5) this evidence justifies the Court, based on waiver, estoppel and/or corporate veil piercing, in treating Baer as one and the same as GMRC for jurisdictional purposes. *Cardell Financial Corp.*, 90-92, 106-110.[3]

Baer's conduct is in clear contempt of the Order.

---

[2] It is immaterial that Baer was not a named party to the action. "To render a person amenable to an injunction it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice. *In re Lennon*, 166 U.S. 548, 554, 17 S. Ct. 658, 660 (1897). In *Lennon*, the U.S. Supreme Court held that an employee of a defendant railroad was bound by an injunction issued against the railroad, its officers, agents, servants and employees. The employee violating the injunction could be cited for contempt of the court's order despite the fact that he was not a party to the underlying action as long it could be proven that he had notice of the order. *Id.* Baer, as the one controlling GMRC and his own actions, not only had notice of the Order, but consented to it. *Cardell Financial Corp.*, 106, 136-139.

[3] As with *Cardell Financial Corp.*, there is in the instant case ample evidence on the record justifying the Court's conclusion that GMRC and Baer are the same for jurisdictional purposes, namely: (1) Baer, as sole shareholder, dominates and controls GMRC; (2) that the relevant claim at issue (Baer's personal "services" claim) is being asserted by both GMRC and Baer personally; (3) that GMRC as a corporation, according to Baer, has no assets and therefore is undercapitalized; and (4) that Baer is seeking to use the corporate entity for wrongful purposes.

**II.    There is Clear and Convincing Evidence that Baer not only Failed to Comply with Numerous Provisions of the Order, but Did so Maliciously to Interfere with AN's Chartering, Sale, and Disposal of the Vessel.**

To impose an order of civil contempt, clear and convincing evidence means "a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." See *Levin v. Tiber Holding Corp.,* 250; *Cardell Financial Corp., 144-147.* As this Court has put it, the "word 'contempt' rings fiercely." See *Aspira of New York v. Bd. Of Educ. of New York*, 423 F. Supp. 647, 649 (S.D.N.Y. 1976). However, "if its connotations in law included only lay notions like scorn or willful disobedience, plaintiffs could not prevail." See *Id.* at 649. Nevertheless, "failures in [any] meaningful respects to achieve substantial and diligent compliance" are sufficient grounds for a court to enter civil contempt against a party. See *Casale v. Kelly,* 710 F. Supp. 2d 347, 359 (S.D.N.Y. 2010).

The following provides clear and convincing evidence of several instances where Baer has deliberately disregarded the provision of the Order. In particular:

- despite the Order's requirement that he shall not "in any way" "interfere" or "obstruct" or "damage" AN (Order ¶¶1 and 8), Baer has continued to stalk its Vessel, waiting and watching for an opportunity to maximize the damage that he causes to AN;

- thus, on June 15, 2020, only days after the Vessel completed its refurbishment and the U.S. Coast Guard issued its Certificate of Inspection, Baer made good on his previous threats, when he emailed to Porter a "Notice of Claim of Lien" against the Vessel (having re-characterized his personal "services" claim as "Seaman's Wages" claim), so as to impede AN's latest efforts to sell or charter the Vessel, Porter Decl. ¶20, Porter Decl. Exh. 3;

- despite the Order's requirement that he and GMRC withdraw and remove harmful statements or postings (Order ¶6), he had evidently refused to withdraw or remove his earlier claims, made to Lockheed Martin that GMRC as charterer controls the Vessel and/or (until June 29, 2020, when he appears to have belatedly removed the post under threat of this motion) on social media that M/V AMERICANA is chartered by GMRC and "is the newest addition to our growing fleet," Porter Exh. 5;

- Baer, in violation of Order ¶¶1 and 8, has recently made multiple threats by phone and email to AN's counsel, including threatening to arrest the Vessel in Florida, "bring down" litigation on AN and report its counsel for imagined ethical violations. Kleiner Decl. ¶¶8-10; Kleiner Decl. Exh. 4-6. And as his price for "settling," Baer is now seeking to extort $400,000 from AN. Kleiner Decl. Exh. 5.[4]

- Baer's threats to arrest the Vessel and his Notice of Claim of Lien also violate ¶4 of the Order in which GMRC, its officers, directors, etc., et al., acknowledged and agreed that they have no right to lien or other right or claim over the Vessel[5];

- in violation of the obligation to arbitrate in Order ¶2, in January and February, 2020, he and GMRC failed comply with the directions of the arbitrators and refused to cooperate in arbitrating the parties' residual claims in the arbitration;

---

[4] While without prejudice settlement discussions are not normally brought to the attention of the Court, Baer's attempts at extortion are neither without prejudice nor good faith settlement attempts.

[5] The Notice of Claim of Lien against the M/V AMERICANA is clear and convincing evidence of a violation of this Court's Order because its states "[t]his lien is for work and expenses performed on the vessel." See Port Decl. Exhs. 2 and 3. Baer's counsel stated on the record of the arbitration that he would not pursue any claims other than "damages" in other forums besides the arbitration. Therefore, it is reasonably certain that by sending the Notice of Seaman's Wage Claims, Baer knowingly violated this Court's Order, intent on interfering with AN's marketing and/or disposal of the Vessel.

- most recently, also in violation of Order ¶2, he has denied that his personal "services" claim (re-characterized as "seaman's wages") is subject to arbitration, despite his and GMRC's counsel agreeing to this, on the record, before the arbitrators (see, Kleiner Decl. Exh. 4, see the penultimate bullet) and despite his consenting to the obligation imposed by the Order (in ¶2), that any and all claims "*in any way relating to the Vessel*" shall be "limited to damages" and "arbitrated in the pending New York arbitration"; and

- Baer has even repudiated the jurisdiction of the Court, despite his agreement to the Order's express provision (in ¶2) that "the Court retain[] jurisdiction as may be needed in aid of said arbitration and/or to enforce this Stipulation and Order."

Based on the above, there is sufficient evidence to warrant the imposition of civil contempt against Baer for his willful disregard of the Order.

### III. Manifestly, Baer has not Made Any Reasonable or Diligent Attempt to Comply with the Terms of the Order.

When a court determines that the relevant order is clear and its terms unambiguous, that proof of noncompliance is clear and convincing, civil contempt is found if a party has not attempted in a reasonable or diligent manner to comply. See *Terry*, 886 F.2d at 1351. "Reasonable diligence, at the very least, requires a party to develop and execute reasonable methods of compliance." See *Casale*, 710 F. Supp. 2d at 359. Reasonableness is objective and the mere assertion of good faith from the alleged contemnor is not a defense to civil contempt. See *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

The only thing Baer diligently pursued, after this Court entered its Order, was to act unreasonably in an effort to further harm AN. Therefore, Baer should be held in civil contempt.

IV.     **Plaintiff is Entitled to the Following Relief**

A.     **Baer Should Be Held in Civil Contempt and Sanctioned for His Willful and Malicious Notice of Claim of Lien and Other Acts in Direct Violation of this Court's Order**

As provided above, this court has the inherent powers to hold a party, who violates its clear order, in civil contempt. See *Playboy Enters., Inc. v. Chuckleberry Publ'g, Inc.*, 939 F. Supp. 1032, 1035 (S.D.N.Y. 1996). Thus, this court may order a wide variety of sanctions to: (1) coerce future compliance with their orders; and (2) compensate the movant for losses the contemnor's past noncompliance caused. See *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).

Here, this Court should immediately require Baer to cease and desist from deliberate interference with AN's business operations, reputation, and customer relations in violation of this Court's order. Specifically, this court should require Baer to: (1) withdraw any and all claims of an ownership interest in the M/V AMERICANA, including but not limited to, any remaining public postings on its social media accounts; (2) immediately withdraw any Notice of Claim of Lien for seaman's wages filed with the United States Coast Guard National Vessel Documentation Center; and (3) to reimburse AN for its reasonable attorney's fees and expense as a result of this motion for civil contempt.

## B.     Immediately Withdraw any Notice of Claim of Lien Against the Vessel

As described above, the filing and prosecution of the Notice of Claim of Lien, *in rem*, against the M/V AMERICANA violates the Stipulation so ordered by this court. Where a court order enjoins a party from filing suit, and the party violates that order, the court may require the immediate dismissal of the lawsuit. See *Securities and Exchange Commission v. Blizerian*, 729 F. Supp. 2d 1, 5 (D.D.C. 2010) (holding that parties in contempt of a court order prohibiting the commencement of certain proceedings may dismiss a lawsuit filed in violation of that court order). Therefore, this court should order that Respondent cease and desist from instituting any Notice of Claim of Lien actions against the Vessel, and to withdraw any Notice of claim of lien filed with the United State Coast Guard ("USCG") National Vessel Documentation Center immediately.

## C.     For Every Day of Non-Compliance a Daily Fine Should Be Imposed

To coerce compliance, judges are vested with wide discretion in fashioning a remedy suitable to compel compliance with its order. See *Vuitton et Fils S.A.*, at 130; *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1062 (2d Cir. 1995). A court can order a contemnor to pay a daily fine until the contemnor complies with the order. See *U.S. v. Mongelli*, 2 F.3d 29, 30 (2d Cir. 1993) (holding that fines are not punitive in nature, when the contemnor refused to testify). See also, *First City, Texas-Houston, N.A. v. Rafidain Bank*, 68 F. Supp. 2d 377, 379 (S.D.N.Y. 1999) (holding a party in contempt and assessing a daily fine, plus interest, for each day that party fails to cure contempt).

The Second Circuit has "in no way set a ceiling…on fines for civil contempt" and there is no "mandatory grace period before fines can take effect." See *Mongelli,* at 30; see e.g., *Spectacular Venture v. World Star Intern.*, 927 F. Supp. 683, 684 (S.D.N.Y. 1996) (where the court entered an order finding the party in contempt, and instituted a daily fine starting the next day). Accordingly, this court should require that Captain Baer pay a fine of $10,000.00, for each day that the Notice

of Claim of Lien is not withdrawn from any USCG database and in the form of release and waiver attached hereto.

### D. Attorneys' Fees Are Warranted for Baer's Willful Contempt

It's without question that Baer willfully filed a Notice of Claim of Lien against the Vessel, warranting an award to AN for reasonable attorneys' fees and costs associated with bringing this motion for civil contempt. It was this Court that determined that where the contemnor's conduct is willful an "award [for] attorney's fees and costs [should be imposed] unless there are persuasive grounds to deny them." See *GMA Accessories, Inc. v. Eminent*, *Inc*., 2008 U.S. Dist. LEXIS 55107, 34-35 (S.D.N.Y. 2008); see also *Vuitton et Filis S.A.,* at 130 ("[s]ince the plaintiff should be made whole for the harm he suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful"). Contempt is willful "where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." See *GMA Accessories, Inc.*, at 35.

Here, not only did Baer act in bad faith when he filed his Notice of Claim of Lien against the M/V AMERICANA, he acted in willful and retaliatory measures that he expressly agreed not to pursue outside arbitration. Moreover, Baer cannot even begin to claim that he was not put on notice of this Court's Order. First, Baer authorized his attorney to sign the stipulation and Order. Second, Baer as a veteran *pro se* litigator must be taken to have clearly understood and intentionally violated the Order.

To date, the wrongful conduct of Baer and GMRC have caused millions of dollars of damage to AN. Porter Decl. ¶2. To ensure that AN is made whole, at least in respect of the legal

costs occasioned by Baer's disregard of the Order, reasonable attorneys' fees and costs should be awarded.

<u>**CONCLUSION**</u>

The entire point of the Stipulation, so ordered by this Court, was to restrain and prevent Captain Baer from continuing his malicious and destructive campaign against Plaintiff and its Vessel. Therefore, plaintiff respectfully requests that this Court enter an order: (1) adjudging Captain Baer to be in contempt; (2) requiring Captain Baer, within 2 days of the issuance of the Court's order, to withdraw any Notice of Claim of Lien against the Vessel, including delivery of the waiver and release form attached hereto, duly signed and acknowledged before a notary; (3) requiring Captain Baer to pay $10,000.00 for each day that he fails to comply with the requirements of decretal 2 above; and (4) requiring Captain Baer to pay expenses, including reasonable attorneys' fees, that plaintiff has incurred in bringing this contempt motion and proof of which plaintiff shall submit to this court on notice.

Dated: New York, New York
      July 1, 2020

                            Respectfully submitted,

                            HILL, BETTS & NASH LLP
                            *Attorneys for Plaintiff*

                    By: */s/ James D. Kleiner*
                            James D. Kleiner
                            14 Wall Street, Suite 5H
                            New York, New York 10005
                            Tel:  (212) 839-7000
                            Fax:  (212) 466-0514