UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ABSOLUTE NEVADA, LLC,

                        Plaintiff,                        19-cv-11479 (PKC)

    -against-

                                                                         OPINION AND
                                                                             ORDER FINDING
GRAND MAJESTIC RIVERBOAT COMPANY                  CIVIL CONTEMPT
LLC,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Absolute Nevada, LLC ("Absolute Nevada") brought claims against defendant Grand Majestic Riverboat Company LLC ("Grand Majestic") related to a failed riverboat charter, seeking only injunctive relief, attorneys' fees, and costs. (Doc. 1). The Court granted in part Absolute Nevada's application for a temporary restraining order and set the matter down for a preliminary injunction hearing. The day before the preliminary injunction hearing, Absolute Nevada and Grand Majestic resolved all matters relating to injunctive relief in a proposed Stipulation and Order that the Court entered on January 6, 2020. (Doc. 19).

        Absolute Nevada now seeks to hold non-party Joseph L. Baer ("Baer"), the President and "sole proprietor" of Grand Majestic, (Doc. 1-1 at 19; Doc. 49 at 5:8), in civil contempt for failing to abide the terms of the January 6, 2020 Stipulation and Order. (Doc. 23). The Court issued an Order to Show Cause why Baer ought not be held in contempt and set a hearing for August 4, 2020 at 2 p.m. The hearing was held as scheduled but Baer did not appear and sought no adjournment in advance thereof.

Upon consideration of the submissions and the presentation at the hearing of August 4, 2020, the Court finds by clear and convincing evidence that Baer has violated the Court's January 6, 2020 Stipulation and Order and is adjudged to be in contempt of Court. Absolute Nevada's motion will be granted to the extent indicated. Further, the Court will deny Baer's motions to dismiss, for sanctions, and for contempt.

FINDINGS OF FACT

Set forth below are the Court's Findings of Fact based on the uncontested evidentiary submissions and the August 4, 2020 hearing on the Order to Show Cause.

1. Baer is the President, owner, and sole member of Grand Majestic. (Doc. 1-1 at 19, 28–29; Doc. 26-3 at 7:9–10; Doc. 49 at 10:6–17).

2. Baer resides at 633 Brandtly Ridge Drive, Covington, Kentucky 41015. (Doc. 45 at 1; Doc. 44-1 at 2–3).

3. In September 2019, Absolute Nevada and Grand Majestic entered into a charter agreement for a riverboat, the M/V Americana (the "Subject Vessel"). (Doc. 25 ¶ 3). By November 2019, this agreement had broken down. (Doc. 25 ¶¶ 5–6). On December 5, 2019, Absolute Nevada commenced arbitration in New York against Grand Majestic, bringing claims arising from the failed charter of the Subject Vessel. (Doc. 26-2 at 1).

4. On December 16, 2019, Absolute Nevada filed suit against Grand Majestic in this Court, seeking emergency relief on claims arising from the failed charter. (Doc. 1).

5. On January 3, 2020, the New York arbitration panel held a teleconference with the parties. (Doc. 26-2 at 2). During this teleconference, Grand Majestic stated that Baer was asserting, individually "and through Grand Majestic," a claim for payment on personal services rendered related to the failed charter. (Doc. 26-3 at 6:20–7:11).

6. On January 6, 2020, the Court entered a Stipulation and Order, which resolved Absolute Nevada's claims for injunctive relief against Grand Majestic. (Doc. 19).

7. The injunctive portion of the January 6, 2020 Stipulation and Order bound "Grand Majestic Riverboat Company, its officers, directors, shareholders, agents, employees, servants, attorneys, and all persons in active concert or participation with them." (Doc. 19 at 1).

8. The January 6, 2020 Stipulation and Order restricted live claims arising from the failed charter to only damages, mandated that such claims be arbitrated, barred Grand Majestic from seeking arrest of the Subject Vessel, mandated the removal of any public statements asserting Grand Majestic's ownership or control of the subject vessel, and subjected the parties to the Court's ongoing jurisdiction. (Doc. 19 at 1–2).

9. On June 15, 2020, Baer sent notice of a "seaman's wage lien" on the Subject Vessel, alleging unpaid wages related to the failed charter. (Doc. 25-3). The lien was later filed with the U.S. Coast Guard. (Doc. 46-1).

10. On or around June 29, 2020, Grand Majestic removed a post from its Facebook page, which stated that the Subject Vessel was part of its fleet. (Doc. 25-5).

11. On July 1, 2020, Absolute Nevada moved to hold Baer in civil contempt for failing to abide by the terms of the January 6, 2020 Stipulation and Order. (Doc. 23).

12. On July 8, 2020, the Court issued an order for Baer to show cause at a hearing why he ought not be held in contempt and directed Absolute Nevada serve this Order to Show Cause upon Baer. (Doc. 36). The Order to Show Cause set forth the asserted basis for holding Baer in contempt of the January 6, 2020 Stipulation and Order: "The manner in which Joseph L. Baer is alleged to have violated the Court's January 6, 2019 order is as set forth in 'Absolute Nevada, LLC's application for an Order to Show Cause' filed on July 1, 2020, (Doc. 23),

and as supplemented by the declarations of James D. Kleiner filed July 1, 2020, (Doc. 26), and July 6, 2020, (Doc. 29), as well as the declaration of Vicki Porter filed July 1, 2020, (Doc. 25)." (Doc. 36 at 1).

13. The Order to Show Cause for contempt advised Baer to retain counsel. (Doc. 36 at 1).

14. On July 9, 2020, Absolute Nevada sent Baer a copy of the July 8, 2020 Order to Show Cause, a copy of this District's Local Civil Rule 83.6, as well as copies of related papers via certified mail. (Doc. 47 ¶ 2).

15. On July 13, 2020, Absolute Nevada attempted personal service upon Baer at his Kentucky home. (Doc. 38). After receiving no answer at the door, the process server left a copy of the July 8, 2020 Order to Show Cause, a copy of Local Rule 83.6, as well as copies of related papers on Baer's front porch. (Doc. 38 at 1).

16. On July 14, 2020, Absolute Nevada twice attempted personal service upon Baer at his Kentucky home. (Doc. 41). After again receiving no answer at the door during the second attempt, the process server left a copy of the July 8, 2020 Order to Show Cause, a copy of Local Rule 83.6, as well as copies of related papers in a wrapped package on Baer's doorstep. (Doc. 41 at 1).

17. On July 15, 2020, Absolute Nevada sent Baer a copy of the July 8, 2020 Order to Show Cause and a copy of Local Rule 83.6 via certified mail. (Doc. 47 ¶ 6).

18. On July 18, 2020, Absolute Nevada attempted personal service upon Baer at his Kentucky home. (Doc. 45). After receiving no answer at the door, the process server taped a copy of the July 8, 2020 Order to Show Cause to Baer's front door. (Doc. 45 at 1).

19. On August 4, 2020, the Court conducted a contempt hearing as set in the Order to Show Cause. (Doc. 49). Counsel for Absolute Nevada attended the hearing in-person and counsel for Grand Majestic appeared via telephone. (Doc. 49).

20. Baer had actual notice of the proceeding. Counsel for Grand Majestic, James Forde, told the Court that he spoken with Baer and that Baer was aware of the hearing. (Doc. 49 at 2:20–3:1 ("THE COURT: Have you been in touch with Mr. Baer? MR. FORDE: I have been. THE COURT: You have not? MR. FORDE: No, I have. THE COURT: Oh. All right. And is Mr. Baer aware of today's hearing? MR. FORDE: Yes, he is, your Honor.")). Baer did not attend either in-person or telephonically. (Doc. 49).

CONCLUSIONS OF LAW

I. Absolute Nevada Has Effected Service of Process Upon Baer.

At the August 4, 2020 hearing, the Court inquired whether Absolute Nevada had effectuated service of the Order to Show Cause upon Baer. Absolute Nevada asserted that it had done so and Grand Majestic took no position. (Doc. 49 at 25:17–31:6; 31:17–32:4). The Court ordered supplemental briefing from the parties on whether proper service had been effectuated on Baer. (Doc. 49 at 32:6–10). In response to the Court's invitation, only Absolute Nevada submitted the requested further briefing. In its papers, Absolute Nevada argued that Rule 4.1(b), Fed. R. Civ. P., only required actual notice of the Order to Show Cause, not formal service. (Doc. 46 at 2–3). Alternatively, Absolute Nevada argued that Baer was properly served under the "nail and mail" provision of "New York's long arm statute" as well as under Rule 4(c)(3)(B)(ii), Fed. R. Civ. P. (Doc. 46 at 3).

Upon consideration of Absolute Nevada's arguments and submissions, the Court finds that Absolute Nevada has effectuated proper service of the Order to Show Cause upon Baer.

A.	Legal Standard.

"[D]ue process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship, No. 12-cv-8087 (CM), 2013 WL 324061, at *1 (S.D.N.Y. Jan. 24, 2013) (alternation in original) (quoting In re Oliver, 333 U.S. 257, 275 (1948)).

Rule 4.1(b), Fed. R. Civ. P., provides due process protections for alleged civil contemnors. Rule 4.1(b) reads:

> **Enforcing Orders: Committing for Civil Contempt.** An order committing a person for civil contempt of a decree or injunction issued to enforce federal law may be served and enforced in any district. Any other order in a civil-contempt proceeding may be served only in the state where the issuing court is located or elsewhere in the United States within 100 miles from where the order was issued.

The second sentence of this Rule appears to encompass a range of orders in contempt proceedings, including an order to show cause. However, judges in this District have read the title portion of this provision as a limitation on the Rule's scope, applying it only to cases in which an arrest order for civil contempt was requested. Specifically, in Spectacular Venture, Judge Kaplan held that the first sentence of Rule 4.1(b) applied to commitment orders for civil contempt in cases involving the enforcement of federal law and the second sentence applied to commitment orders for civil contempt in diversity cases. Spectacular Venture, L.P. v. World Star Int'l, Inc., 927 F. Supp. 683, 685–86 (S.D.N.Y. 1996). Based on this interpretation of the Rule, Judge Kaplan then declined to issue the requested arrest order, but still held the relevant non-party in civil contempt and imposed coercive fines upon him. Id. at 686. Subsequently, judges in this District and throughout the

6

country have consistently applied the service requirements of Rule 4.1(b) only to arrest orders for civil contempt rather than any other remedy short of civil commitment.  See CE Int'l Res., 2013 WL 324061, at *2–3; Flannigan v. Vulcan Power Grp., LLC, No. 09-cv-8473 (LAP), 2019 WL 6245394, at *2 (S.D.N.Y. Nov. 22, 2019); see also SD Prot., Inc. v. Del Rio, 587 F. Supp. 2d 429, 435–36 (E.D.N.Y. 2008); Korrey v. Ferguson, No. 10-cv-755, 2014 WL 12744798, at *3 (W.D. Mich. Feb. 26, 2014).

The Local Civil Rules of this District provide the requisite due process protection for a wider range of civil contempt remedies and state in relevant part:

> A proceeding to adjudicate a person in civil contempt, including a case provided for in Fed. R. Civ. P. 37(b)(1) and 37(b)(2)(A)(vii), shall be commenced by the service of a notice of motion or order to show cause. . . . Where the alleged contemnor has appeared in the action by an attorney, the notice of motion or order to show cause and the papers upon which it is based may be served upon said attorney; otherwise service shall be made personally, together with a copy of this Local Civil Rule 83.6, in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons.

Local Civil Rule 83.6(a).  Local Rule 83.6(a) requires personal service of a non-party sought to be held in civil contempt; actual notice alone is insufficient.[1]  N.Y.C. Dist. Council of Carpenters Pension Fund v. G & M Drywall Sys. Inc., No. 07-cv-1969 (CM), 2010 WL 2291490, at *15 (S.D.N.Y. June 1, 2010) (stating that "[t]he fact that [the alleged contemnor] appears to have had actual notice that Plaintiffs were pursuing contempt sanctions is not sufficient under Local

---

[1] Courts operating under the aegis of Local Rule 83.6(a) have interpreted the personal service requirement to encompass methods of substitute service permitted by Rule 4, Fed. R. Civ. P., and N.Y. C.P.L.R § 308, if applicable. Giuliano v. N.B. Marble Granite, No. 11-md-00753 (JG) (VMS), 2014 WL 2805100, at *7 (E.D.N.Y. June 20, 2014) (finding "nail and mail" service, pursuant to N.Y. C.P.L.R § 308, satisfied the personal service requirement of Local Rule 83.6(a)); Leser v. U.S. Bank Nat. Ass'n, No. 09-cv-2362 (KAM) (ALC), 2011 WL 1004708, at *4 (E.D.N.Y. Mar. 18, 2011) (authorizing "nail and mail" service, pursuant to N.Y. C.P.L.R § 308, as a means of personal service under Local Rule 83.6(a)); see also Millington, 2012 WL 2906017, at *1.

Rule 83.[6]" (citing Drywall Tapers & Pointers of Greater N.Y. Local 1974 of I.B.P.A.T. AFL–CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n, 889 F.2d 389, 397–98 (2d Cir. 1989))); see also Harris ex rel. Beare v. Millington, No. 07-cv-3391 (TLM) (MDG), 2012 WL 2906017, at *1 (E.D.N.Y. July 16, 2012) ("Even if the alleged contemnor received actual notice, Rule 83.6 requires personal service.").

Rule 4, Fed. R. Civ. P., governs the manner of service for a summons, providing that service may be effectuated upon an individual located within the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>    (A) delivering a copy of the summons and of the complaint to the individual personally;
>    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Rule 4(e), Fed. R. Civ. P.

New York law authorizes the service of an individual outside of New York in the same manner as that individual might be served within New York. N.Y. C.P.L.R. § 313. In New York, service of a summons may be effectuated "by affixing the summons to the door of . . . dwelling place or usual place of abode . . . and by . . . mailing the summons to such person at his or her last known residence." N.Y. C.P.L.R. § 308(4). The affixing and the mailing must occur within twenty days of each other and proof of both types of service must filed with the court within twenty days of the later dated method of service. N.Y. C.P.L.R. § 308(4). Though this is colloquially known as "nail and mail" service, the summons needs only be affixed to the door. PacAmOr Bearings, Inc. v. Foley, 460 N.Y.S.2d 662, 664 (3d Dep't 1983) ("The affixing of a

summons to the door is to be accomplished by use of a nail, tack, tape, rubber band or some other device which will ensure a genuine adherence."); see also Werner v. Schweit, 526 N.Y.S.2d 175, 175 (2d Dep't 1988); New York State Nat. Org. for Women v. Terry, 961 F.2d 390, 399 (2d Cir. 1992), judgment vacated sub nom. Pearson v. Planned Parenthood Margaret Sanger Clinic (Manhattan), 507 U.S. 901 (1993) (citing PacAmOr Bearings, 460 N.Y.S.2d at 664).

"Nail and mail" service is only permitted if personal service upon the relevant individual cannot be accomplished "with due diligence." N.Y. C.P.L.R. § 308(4); see also Allianz Ins. Co. v. Otero, 353 F. Supp. 2d 415, 421 (S.D.N.Y. 2004); PacAmOr Bearings, 460 N.Y.S.2d at 663. Whether sufficient effort has been expended as to satisfy this due diligence requirement and permit the use of "nail and mail" service is determined based on the facts of the case. See David D. Siegel, New York Practice § 74 (5th ed.).

B. Discussion.

Absolute Nevada seeks to hold non-party Baer in civil contempt for violations of the January 6, 2020 Stipulation and Order and requests that the Court provide injunctive and monetary relief.[2] In a submission to the Court, Baer argues that he has not been properly served, requiring dismissal of Absolute Nevada's motion for civil contempt. (Doc. 35). As Baer is not a named party and has not appeared in this case, Local Rule 83.6(a) makes clear that Baer's actual notice of the Order to Show Cause for contempt and the August 4, 2020 hearing is insufficient. Instead, Baer must have been personally served a copy of the Order to Show Cause and a copy of Local Rule 83.6, in accordance with Rule 4, Fed. R. Civ. P.

---

[2] Absolute Nevada relies on Spectacular Venture, arguing that the Court can hold Baer in contempt for violation of the January 6, 2020 Stipulation and Order even though he was not a party to this case. (Doc. 46 at 2 (citing 927 F. Supp. 683)). However, the non-party in Spectacular Venture had been personally served. 927 F. Supp. at 684 ("Plaintiff's counsel subsequently filed proof of personal service on Reynolds on April 25, 1996."). As such, that decision provides little insight into the service issue here.

In its supplemental briefing, Absolute Nevada claims to have properly served Baer under the "nail and mail" provision of "New York's long arm statute" as well as under Rule 4(c)(3)(B)(ii), Fed. R. Civ. P. (Doc 46 at 3). Rule 4(e)(1) permits service in accordance with the state law of the state in which the Court sits. As such, the Order to Show Cause in this case may be served in accordance with New York law. New York law permits "nail and mail" service upon an individual located outside of New York State if sufficiently diligent attempts at personal service have been previously made. Here, Absolute Nevada made three attempts at personal service of Baer at his actual home address on different days and at different times of the day, before leaving a package of materials, including a copy of the Order to Show cause and a copy of Local Rule 83.6, on Baer's front doorstep. Three such failed attempts are sufficient to satisfy the "with due diligence" prerequisite for "nail and mail" service. U.S. Bank, N.A. v. Cepeda, 64 N.Y.S.3d 104, 105 (2d Dep't 2017) (finding "that three visits . . . to the homeowner's residence, each on different days and at different times of the day" sufficient to permit "nail and mail" service); JP Morgan Chase Bank, N.A. v. Baldi, 10 N.Y.S.3d 126, 127 (2d Dep't 2015) (finding "three visits . . . to the appellant's residence on three different occasions and at different times" sufficient to permit "nail and mail" service). As the papers served were too bulky to be physically attached to Baer's door (without causing the door significant disfigurement), the Court deems that the package placed at the front doorstep of Baer's residence a sufficient means under C.P.L.R. § 308(4) of affixing the process and ensuring Baer received it.

Absolute Nevada made a fourth attempt at personal service upon Baer at his home on July 18, 2020. (Doc. 45). During this attempt, the process server attests that he taped the Order to Show Cause to Baer's front door, but does not attest that he included or also taped a copy of Local Rule 83.6 to Baer's front door. (Doc. 45 at 1). The failure to provide a copy of Local

10

Rule 83.6 during service of the Order to Show Cause is a minor technical violation of Local Rule 83.6(a) not affecting the validity of the service of process because Baer received a copy of this Local Rule from the July 14, 2020 "nail" service and from the two "mail" services, discussed below. This failure to comply with Local Rule 83.6(a) did not affect the validity of this "nail" service under C.P.L.R § 308(4) and Rule 4(e)(1) and is excused. See Contino v. United States, 535 F.3d 124, 126 (2d Cir. 2008) (stating "that district courts had the inherent authority to decide when a party's failure to comply with a local rule could be excused" (citing Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1048 (2d Cir. 1991))).

On July 9, 2020, counsel for Absolute Nevada caused copies of the Order to Show Cause, Local Rule 83.6, and related papers to be mailed to Baer at his home address. (Doc. 47 ¶ 2). On July 15, 2020, counsel for Absolute Nevada caused copies of the Order to Show Cause and Local Rule 83.6 to be mailed to Baer at his home address. (Doc. 47 ¶ 6). These nailings and mailings occurred within twenty of days of each other and proof of these methods of service was promptly filed with the Court.

Based on this evidentiary record, the Court finds that Baer was properly served with process under N.Y. C.P.L.R. § 308(4) and Rule 4(e)(1).

II. Baer Will Be Held in Civil Contempt of the January 6, 2020 Stipulation and Order.

    A. Legal Standard.

"A nonparty respondent may be held in contempt of a court order if the respondent abets the party named in the order in its noncompliance or if it is legally identified with that party." Spectacular Venture, 927 F. Supp. at 684–85 (citing New York v. Operation Rescue, 80 F.3d 64, 70 (2d Cir. 1996)); see also Weston Capital Advisors, Inc. v. PT Bank Mutiara, 667 Fed. App'x 15, 17 (2d Cir. 2016) ("In order for a court to hold a nonparty respondent in contempt of a court order, the respondent must either abet the [party named in the order], or must be legally identified

11

with him." (alternation in original) (quoting Operation Rescue, 80 F.3d at 70)); Fed. R. Civ. P. 4.1 advisory committee's note to 1993 amendment (stating that Rule 4.1 "does not distinguish between parties and other persons subject to contempt sanctions by reason of their relation or connection to parties"). Rule 65, Fed. R. Civ. P., affirms that certain non-parties, including "officers" and "persons who are in active concert or participation with" the parties, are bound by an injunction. Fed. R. Civ. P. 65(d)(2)(B)–(C).

"A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989) (citing EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n, 753 F.2d 1172, 1178 (2d Cir. 1985), aff'd, 478 U.S. 421 (1986)). "'Fed. R. Civ. P. 65(d) requires that injunctive orders be "specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained.' The Rule was intended to prevent an uncertain or vague decree from becoming the basis for a contempt citation." Id. at 1351–52 (quoting Schmidt v. Lessard, 414 U.S. 473, 476 (1974) (per curiam)). "To comply with the specificity and clarity requirements, an injunction must 'be specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" Id. (quoting In re Baldwin–United Corp., 770 F.2d 328, 339 (2d Cir. 1985)).

B. Discussion.

Baer is a non-party to this action. However, Baer is still bound by and therefore may be held in civil contempt of the January 6, 2020 Stipulation and Order as an individual legally identified with Grand Majestic. Spectacular Venture, 927 F. Supp. at 685. Baer is the President, sole member, sole director, and "sole proprietor" of Grand Majestic. He is an "officer" of Grand Majestic and certainly a person in active concert or participation with Grand Majestic.

Rule 65(d)(2)(B)–(C).  Accordingly, Baer is explicitly bound by the terms of the January 6, 2020 Stipulation and Order.  Further, Baer has used Grand Majestic as a corporate vehicle for advancing his personal interests as demonstrated by Grand Majestic's assertion before the New York arbitration panel of a personal services claim that is nearly identical to the seaman's wages claim Baer now asserts on an individual basis.  (Doc. 25-3; Doc. 46-1; Doc. 26-3 at 6:20–7:11).  The evidence presented in the record is sufficient for the Court to determine that non-party Baer can be held in civil contempt for violations of the January 6, 2020 Stipulation and Order as an individual legally identified with Grand Majestic.  Spectacular Venture, 927 F. Supp. at 685 (holding a non-party individual in contempt after finding that the non-party was "the defendant's president and principal" and that, "[a]s a practical matter the defendant and [the non-party] are one and the same.").

        Absolute Nevada has proven by clear and convincing evidence that Baer willfully violated the unambiguous terms of the Stipulation and Order and has not made a diligent attempt at compliance.

        First, the terms of the January 6, 2020 Stipulation and Order are clear and unambiguous.  "A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed,' who 'must be able to ascertain from the four corners of the order precisely what acts are forbidden.'"  King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) (internal citations omitted) (first quoting Hess v. N.J. Transit Rail Operations, Inc., 846 F.2d 114, 116 (2d Cir. 1988); and then quoting Drywall Tapers & Pointers of Greater N.Y., 889 F.2d at 395).  The January 6, 2020 Stipulation and Order leaves no uncertainty as to its addressees, unambiguously enjoining "Grand Majestic Riverboat Company, its officers, directors, shareholders, agents, employees, servants, attorneys, and all persons in active concert or

participation with them." (Doc. 19 at 1). The Stipulation and Order then explicitly details the covered conduct, stating:

> 2) that any and all claims of [Grand Majestic] under or in any way related to the parties' September 24, 2019 bareboat charter party (the "Charter") and/or the [Subject] Vessel are and shall be limited to damages (subject to proof of entitlement and quantum of damages, if any); and that such claims shall be arbitrated in the pending New York arbitration (the "Arbitration"), with the Court retaining jurisdiction as may be needed in aid of said Arbitration and/or to enforce this Stipulation and Order; . . .
> 4) [Grand Majestic] acknowledges that it has no right to specific performance of the Charter; or lien or any other right in or claim over the [Subject] Vessel; . . .
> 6) [Grand Majestic] agrees to immediately withdraw and remove any statement, posting or publicity asserting or suggesting that the [Subject] Vessel is part of [Grand Majestic]'s fleet; and/ or advertising or representing that the [Subject Vessel] is owned, operated or controlled by [Grand Majestic]; . . . .

(Doc. 19 ¶¶ 2, 4, 6). The provisions make clear that any claims arising from the failed charter must be brought through the New York arbitration and are limited to damages rather than any encumberment of the Subject Vessel. Further, these provisions explicitly state that statements claiming Grand Majestic's ownership of or control over the Subject Vessel must be immediately retracted.

Second, Absolute Nevada has put forth clear, convincing, and uncontested evidence that Baer has violated the terms of the January 6, 2020 Stipulation and Order. Based on this evidentiary record, the Court finds as follows:

1. The Court finds that Baer is bound by the January 6, 2020 Stipulation and Order as an individual legally identified with Grand Majestic, an officer of Grand Majestic, and as

14

a person in active concert or participation with Grand Majestic. Spectacular Venture, 927 F. Supp. at 685; Rule 65(d)(2)(B)–(C).

2. During the January 3, 2020 teleconference with the New York arbitration panel, Grand Majestic stated that its claims for damages related to the failed charter included "the time that Captain Baer spent on the [Subject Vessel] attempting to assist Absolute Nevada in getting the [Subject Vessel] seaworthy and obtaining a certificate of inspection from the Coast Guard." (Doc. 26-3 at 6:14–19). In response to an arbitrator, who asked if "Mr. Baer's claim for services he says he rendered which should be compensated" was "subject to the arbitration clause," Grand Majestic responded "[y]es." (Doc. 26-3 at 6:20–7:4). Upon further questioning from the arbitration, Grand Majestic continued that this personal services claim was being asserted personally by Baer as well as through and by Grand Majestic. (Doc. 26-3 at 7:5–10).

3. The Court concludes that claims related to alleged services rendered by Baer in order to "get[] the [Subject Vessel] seaworthy and obtain[] a certificate of inspection from the Coast Guard" were related to the failed charter that was the subject of the January 6, 2020 Stipulation and Order.

4. The Court finds that Baer, as President, principal, and "sole proprietor" of Grand Majestic, caused this personal services claim to be asserted on his own behalf as well as on behalf of Grand Majestic during the arbitration. Accordingly, Baer, as a non-party bound by the January 6, 2020 Stipulation and Order, knew that this personal services claim related to the failed charter and was covered by Stipulation and Order.

5. On June 15, 2020, Baer sent notice of a "seaman's wage lien" on the Subject Vessel and later filed this lien with the U.S. Coast Guard. (Doc. 25-3; Doc. 46-1). This lien was filed in order to recoup allegedly unpaid wages earned by Baer while ensuring that the Subject

Vessel was seaworthy. Though its form and name have changed, this lien asserts the same claim for unpaid personal services rendered that Baer had acknowledged was related to the failed charter, had aired before the arbitration panel, and had asserted on behalf of himself and Grand Majestic.

  6.  The Court finds that the June 15, 2020 lien for unpaid seaman's wages is substantively identical to Baer's prior claim for personal services related to the failed charter, which was covered by the January 6, 2020 Stipulation and Order.

  7.  Accordingly, the Court finds Baer to be in violation of the January 6, 2020 Stipulation and Order. Baer, a non-party bound by the Stipulation and Order as an officer of Grand Majestic and as a person "legally identified with" Grand Majestic, Spectacular Venture, 927 F. Supp. at 684–85, violated:

  a. paragraph 2 of the Stipulation and Order by bringing a claim related to the failed charter outside of arbitration;

  b. paragraph 2 of the Stipulation and Order by bringing a claim related to the failed charter that places an encumbrance on the title of the Subject Vessel and so is not limited to damages;

  c. paragraph 4 of the Stipulation and Order by bringing a claim related to the failed charter that places a lien on the Subject Vessel;

  8.  The Court further finds that Baer, as President, principal, and "sole proprietor" of Grand Majestic, violated paragraph 6 of the Stipulation and Order by failing to remove a statement, which asserted Grand Majestic's ownership of or control over the Subject Vessel, until on or about June 29, 2020, six months after the Stipulation and Order was entered.

  Third, despite actual knowledge of the Court's Order to Show Cause and of the August 4, 2020 hearing on civil contempt charges for these violations of the January 6, 2020

Stipulation and Order, Baer has not made a meaningful attempt to come into compliance with the Stipulation and Order or otherwise explain his actions to the Court. Baer's only submission to the Court, motions to dismiss, for sanctions, and for contempt, did not include any accompanying evidentiary support to counter Absolute Nevada's evidence. Baer's refusal to submit argument or evidence does not relieve this Court of its obligation to examine Absolute Nevada's evidence to determine whether, if believed, it would support a contempt finding. Cf. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (discussing movant's burden on an unopposed motion for summary judgment). The Court finds that Absolute Nevada has proven, by clear and convincing evidence, both noncompliance with the Court's Stipulation and Order as well as no diligent effort at compliance. (See Docs. 19, 25, 26, 35, 36, 44-1, 46-1, 47, & 49).

Baer's violation of paragraph 6 of the Stipulation and Order, namely the failure to immediately withdraw statements claiming Grand Majestic's ownership of or control over the Subject Vessel, is an exception to the above analysis. Based on the evidence presented by Absolute Nevada, Baer, as sole member and "sole proprietor" of Grand Majestic, caused the relevant statement to be removed from Facebook on or about June 29, 2020. Accordingly, Baser is now in compliance with paragraph 6 of the Stipulation and Order. Other than the time elapsed before this Facebook statement was removed, Absolute Nevada has not presented evidence that a good faith and diligent attempt to comply with paragraph 6 of the Stipulation and Order was not made. As such, the Court declines to find Baer in contempt for his previous violation of paragraph 6 of the Stipulation and Order.

The Court finds Baer to be in civil contempt of the Court in that, in violation of the January 6, 2020 Stipulation and Order, he (1) brought a claim related to the failed charter outside

17

of arbitration; (2) encumbered the Subject Vessel with a lien related to the failed charter; and (3) placed a lien on the Subject Vessel for a claim related to the failed charter.

III. The Court Will Impose Sanctions for Civil Contempt on Baer.

One purpose of sanctions for civil contempt is "coerce the contemnor into future compliance with the court's order." Terry, 886 F.2d at 1352–53. "When imposing coercive sanctions, a court should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." Id.; see also CE Int'l Res., 2013 WL 324061, at *3.

Baer's continued non-compliance with the January 6, 2020 Stipulation and Order creates the risk of two serious harms. First, Absolute Nevada risks continued harm in the form of an encumbrance on its ownership and control of the Subject Vessel, which may impede its ability to book new business or sell the Subject Vessel. Second, permitting individuals to simply ignore the Court's orders without repercussion represents a distinct and serious harm. F.T.C. v. Verity Int'l, Ltd., 140 F. Supp. 2d 313, 318 (S.D.N.Y. 2001) ("[Contemnors] were given ample opportunity to advance that view to the Court before the order was entered, a course they did not take, and even now belatedly seek modification of the order, as is their right. But they are not entitled simply to disobey it. Down that path lies anarchy."); see also CE Int'l Res., 2013 WL 324061, at *3. The Court deems monetary sanctions as a potentially effective means of obtaining compliance with its Stipulation and Order. The Court has not received any evidence on Baer's financial resources or the possible effect of monetary sanctions on Baer due to Baer's non-participation in the August 4, 2020 hearing. In the absence of such information, the Court will still impose monetary sanctions but will not set them at a ruinous level.

18

In an effort to bring Baer into compliance with this Court's January 6, 2020 Stipulation and Order, the Court imposes upon Baer the monetary sanction described in the Conclusion of this Opinion and Order.

IV.  Baer's Motions to Dismiss, for Sanctions, and for Contempt Are Denied.

On July 1, 2020, Baer submitted a motion to dismiss Absolute Nevada's motion for civil contempt as well as motions both to impose sanctions upon and to hold Absolute Nevada and its counsel in contempt.  (Doc. 35).  These motion argue that Absolute Nevada's motion should be dismissed and Absolute Nevada should be punished for a failure to properly serve Baer with the Order to Show Cause under Rule 4, Fed. R. Civ. P.  (Doc. 35 at 3, 5).  However, as discussed above, the Court has found that Absolute Nevada effectuated proper service upon Baer under Rule 4, Fed. R. Civ. P.  Accordingly, Baer's motions will be denied.

CONCLUSION

Baer's motions to dismiss, for sanctions, and for civil contempt are DENIED.  (Doc. 35).  Absolute Nevada's motion for civil contempt is GRANTED to the extent indicated herein.  (Doc. 23).

Absolute Nevada shall forthwith serve a copy of this Order upon Baer and file an affidavit of service with this Court within 5 days.

If Baer has not come into compliance with the January 6, 2020 Stipulation and Order as well as this Opinion and Order, within 7 days of the filing of the aforementioned affidavit of service, a monetary sanction of $1,000 per day is imposed on Baer, with the amount of the monetary sanction doubling every 7 days thereafter until such time that he comes into compliance with the January 6, 2020 Stipulation and Order as well as this Opinion and Order by (1) withdrawing any and all liens against the Subject Vessel; and (2) paying any and all monetary

sanctions incurred under this Opinion and Order into the Registry of this Court, which payments are subject to further Order of this Court.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 1, 2020