UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ABSOLUTE NEVADA, LLC,

                    Plaintiff,                     19-cv-11479 (PKC)

      -against-

                                                  <u>OPINION AND ORDER</u>

GRAND MAJESTIC RIVERBOAT COMPANY,
LLC,

                    Defendant.
----------------------------------------------------------------x

CASTEL, District Judge:

        In August 2021, Absolute Nevada, LLC ("Absolute Nevada") moved for confirmation of two partial final arbitration awards, one dated July 6, 2021 (the "July 6 Award") and the other dated August 5, 2021 (the "August 5 Award"), in favor of Absolute Nevada and against Grand Majestic Riverboat Company, LLC ("Grand Majestic") and Captain Joseph Baer ("Baer"). (Doc 80.) In September 2021, this Court granted the Motion to Confirm as against Grand Majestic but stayed it as against Baer pending his appeal of this Court's order adjudicating him to be in civil contempt. (Doc 91); see also <u>Absolute Nevada, LLC v. Baer</u>, 21-50-cv. Following the Second Circuit's affirmation of the contempt finding,[1] the Court vacated the stay of the Motion to Confirm as it relates to Baer. (Doc 94 at 1.)

        Baer, who is proceeding <u>pro se</u>, opposes Absolute Nevada's Motion to Confirm and has filed a Motion to Vacate. (Doc 104.) For the reasons to be explained below, Absolute Nevada's Motion to Confirm is granted as to Baer and Baer's Motion to Vacate is denied.

---

[1] (Doc 92 (Summary Order of February 7, 2022).)

Mailed to Joseph Baer on December 14, 2022.

BACKGROUND

   The Failed Charter:  In September 2017, Baer approached Absolute Nevada to express interest in purchasing a vessel, the M/V Americana, owned by Absolute Nevada (the "Vessel").  (Doc 1 at 4.)  In 2019, after Absolute Nevada had placed the Vessel for sale with a ship broker, Baer, acting as president of Grand Majestic, approached the broker about chartering the Vessel.  (Id.)  On September 24, 2019, Absolute Nevada and Grand Majestic entered into a bareboat charter agreement (the "Charter").  (Id. at 5; Doc 1, Ex. 1.)  Grand Majestic agreed to charter the Vessel for a period of 24 months beginning "upon the date of [Grand Majestic's] execution of [Absolute Nevada's] form of Certificate of Delivery and Acceptance" of the Vessel.  (Doc 1, Ex. 1 ¶ 4.)  The agreement was signed by Vicki L. Porter as managing director of Absolute Nevada and by Baer as president of Grand Majestic.  (Doc 1, Ex. 1.)

   The Charter provided that it would automatically be cancelled if certain preconditions were not met by October 12, unless Grand Majestic opted to extend the cancellation date to October 19.  (Doc 1 at 5; Doc 1, Ex. 1 ¶ 7.)  It also contained the following arbitration provision:

> This Agreement shall be governed by and construed in accordance with Title 9 of the United States Code and the substantive law (not including the choice of law rules) of the State of New York and any dispute arising out of or in connection with this Agreement shall be referred to three (3) persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purposes of enforcing any award, judgment may be entered on an award by any court of competent jurisdiction.  The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc. . . .

(Doc 1, Ex. 1 ¶ 26.)

In early October 2019, Baer boarded the Vessel, apparently in order to inspect whether it was in an acceptable condition.  (See Doc 1 at 7; Doc 25 at 4; Doc 1, Ex. 6 (October 6, 2019 email from Baer to ship broker describing Baer's inspection of the Vessel); Doc 1, Ex. 14 (October 27, 2019 email from Baer addressed to Vicki Porter stating that Baer "completed an inventory" and that certain "deficiencies" needed to be corrected before Grand Majestic could accept the Vessel).)  According to Absolute Nevada, Baer "misrepresented to the acting Captain and crew that he and [Grand Majestic] had control of the Vessel as charterer."  (Doc 1 at 7; see also Doc 1, Ex. 5 (October 4, 2019 email from ship broker to Baer stating Baer did not have any claim to or control of the Vessel); Doc 1, Ex. 7 (October 7, 2019 email from Vicki Porter to Baer stating the same).)  According to Baer, the work he performed on the Vessel was "outside the charter agreement Grand Majestic Riverboat Company, LLC had with Absolute Nevada, LLC."  (Doc 104 at 6.)  Baer later sent Absolute Nevada an invoice for "Professional Services and Expenses Re MV Americana" in the amount of $17,095.00.  (Doc 1, Ex. 21.)

By October 19, 2019, Grand Majestic had not accepted delivery of the Vessel and had not opted to extend the automatic cancellation date.  (Doc 1 at 9.)  Therefore, the Charter was automatically cancelled.  (Id.)

In the weeks that followed, Baer continued to reach out to Absolute Nevada stating that Grand Majestic still intended to agree to the ship once the "deficiencies" were corrected.  (Doc 1 at 9; Doc 1, Ex. 14.)  Absolute Nevada made one final attempt to revive the agreement, but Grand Majestic rejected it.  (Doc 1 at 9-10, Ex. 15.)  Absolute Nevada then "explored other options," including chartering the Vessel to Lockheed Martin Corporation, which had previously chartered the Vessel.  (Doc 1 at 4, 10.)  Baer continued to approach Absolute Nevada about the Charter, and emailed Lockheed Martin claiming that Grand Majestic

"holds a Bareboat Charter/Purchase Charter" for the Vessel, that there were issues with the Vessel, that Absolute Nevada was violating the terms of the Charter, and that any agreement between Absolute Nevada and Lockheed Martin would be improper.  (Doc 1 at 10-12, Ex. 20.) Lockheed Martin declined to recharter the Vessel.

   <u>Commencement of Arbitration Proceedings:</u>  In early December 2019, Absolute Nevada commenced arbitration against Grand Majestic.  (Doc 1, Ex. 2.)  The arbitration demand requested expedited relief and sought, "among other things: (1) a declaration that the Charter is at an end, that neither [Grand Majestic] nor Capt. J. Baer has any right to operate or in any way restrain or interfere with [Absolute Nevada's] use, operation and chartering of the Vessel; (2) an injunction enjoining [Grand Majestic] and Capt. J. Baer from actions inconsistent with such declaration;" and (3) damages and attorneys' fees.  (<u>Id.</u>)

   Absolute Nevada then filed a complaint with this Court on December 16, 2019. (Doc 1.)  It sought a temporary restraining order or preliminary injunction, pending the arbitration, to enjoin Grand Majestic and Baer from interfering with Absolute Nevada's business and the Vessel.  (<u>Id.</u>)  On December 23, 2019, the Court granted the application in part.  (Doc 7.)

   Once the arbitrators were appointed, the parties accepted the panel on December 30, 2019.  (Doc 65-4 at 2.)  As described in further detail below, the panel ultimately issued three partial final awards in favor of Absolute Nevada.

   <u>January 3, 2020 Telephone Conference:</u>  On January 3, 2020, the arbitration panel held a telephone conference with counsel for the parties.  The "real question," according to one of the arbitrators, was "whether Grand Majestic [was] willing to stipulate to restricting its claim to a claim for damages."  (Doc 26, Ex. 3.)  Counsel for Grand Majestic, James Forde, stated that the company agreed to "not arrest" the Vessel but that it "ha[d] an interest [in] enforcing the

arbitration agreement and there [would] be damages of some sort . . . including, but not limited to, the time that Captain Baer spent on the [Vessel] attempting to assist Absolute Nevada in getting the [Vessel] seaworthy and obtaining a certificate of inspection from the Coast Guard." (Id.)  One of the arbitrators then asked: "Are you saying, Mr. Forde, that claim you just referred to, Mr. Baer's claim for services he says he rendered which should be compensated . . . is subject to the arbitration clause?"  (Id.)  Forde answered, "Yes, consequential damages."  (Id.)  The arbitrator further clarified, "He is asserting it personally, I think you're saying," to which Forde responded, "Yes, and through Grand Majestic Riverboat Company.  He is sole proprietor."  (Id.; Doc 51 at 2.)

The arbitrators also encouraged the parties to enter into a stipulation "to address the issues forming the basis for the expedited relief" sought by Absolute Nevada.  (Doc 26, Ex. 2 at 3; Doc 26, Ex. 3.)  On January 6, 2020, the parties agreed to a proposed Stipulation and Order and submitted it to this Court for consideration.  (Doc 26, Ex. 2; Doc 17.)

The January 6 Stipulation and Order:  The Court entered the Stipulation and Order the same day (the "January 6 Stipulation and Order").  (Doc 19.)  In the January 6 Stipulation and Order, Grand Majestic and its officers, directors, shareholders, agents, employees, servants, attorneys, and all persons in active concert or participation with them (collectively, "GMRC"), agreed, in part, that GMRC had no rights in or to the Vessel and that any and all claims of GMRC related to the Charter or the Vessel would be limited to damages and arbitrated in the New York arbitration.  (Doc 19).  As the Court has previously stated, the January 6 Stipulation and Order applied to Baer "as an individual legally identified with Grand Majestic, an officer of Grand Majestic, and as a person in active concert or participation with Grand Majestic."  (Doc 51 at 14-15.)

The March 25 Award:  After the January 6 Stipulation and Order resolved the substantive issues in Absolute Nevada's arbitration demand, Absolute Nevada sought recovery of attorneys' fees incurred in both the arbitration proceeding and the action before this Court. (Doc 65-4 at 3.)  The arbitrators directed Grand Majestic to serve its opposition by February 19. In response, Baer submitted an unsworn "affidavit" describing the work he performed aboard the Vessel in October 2019 (the "February 2020 affidavit").  (See Doc 102, Ex. 1.)  Absolute Nevada claims Baer also sent "over 100 pages of emails" to the panel between January and March 2020, (Doc 102 at 3), but neither Absolute Nevada nor Baer has submitted those emails as part of the record or summarized their contents.

The panel concluded in an award dated March 25, 2020 (the "March 25 Award") that the fees sought were reasonable and ordered Grand Majestic to pay Absolute Nevada the requested attorneys' fees and costs as well as to reimburse Absolute Nevada for arbitrators' fees. (Doc 65-4 at 5, 7.)  Upon Absolute Nevada's request, the March 25 Award also ordered that the panel remain constituted for one year to address any further disputes related to the Charter.  (Id. at 3-5, 7.)  Absolute Nevada filed a motion to confirm the March 25 Award, (Doc 65), which the Court granted in May 2021, (Doc 72).  The March 25 Award is not presently at issue.

Baer's Lien and Subsequent Contempt Proceedings:  On June 15, 2020, Baer issued a Notice of Claim of Lien, asserting a lien for unpaid wages related to work he performed on the Vessel in the amount of $17,095.00.  (Doc 80-1 ¶ 20 (citing Doc 81, Ex. 5)).  He later filed the Notice of Claim of Lien with the United States Coast Guard Vessel Documentation Center ("NVDC") on July 1, 2020.  (Doc 81, Ex. 1-A at 2.)  The Court has since found the June 15, 2020 lien to be "substantively identical to Baer's prior claim for personal services related to the failed charter."  (Doc 51 at 16.)

On July 1, 2020, Absolute Nevada moved to hold Baer in civil contempt for failing to abide by the terms of the January 6 Stipulation and Order.  (Doc 23; Doc 51 at 3.)  The Court found that Baer violated the January 6 Stipulation and Order – which applied to Baer and required all claims related to the Vessel and Charter to be brought in the New York arbitration – and adjudged him to be in contempt of Court.  (Doc 51.)  Baer appealed, and the Second Circuit affirmed the contempt finding but remanded for the Court to determine a reasonable contempt remedy.  (Doc 92.)  The Court has addressed the contempt remedy in a separate order.  (Doc 134.)

   Proceedings Leading to the July 6 Award:  On March 25, 2021, Absolute Nevada emailed the arbitration panel requesting it remain constituted for another month while Absolute Nevada prepared a request for a short ruling:

> (1) recognizing that the alleged personal claim of [Baer] was expressly referred to the arbitrators, per [Forde's] statement, on the record, at the January 3, 2020 hearing; (2) that if such claim exists, the real party in interest and the only party entitled to pursue it is [Grand Majestic] (as "Charterer" under the failed [Charter]), unless [Grand Majestic] and Baer are found to be or admit to being one and the same legal person/entity (i.e., the Charterer); [and] (3) that the "Charterer" (both in the [Charter] and by stipulation) waived any lien in the Vessel . . . .

(Doc 81, Ex. 1-A at 3.)

   Forde then advised the panel that Grand Majestic had ceased operations and argued that Baer's personal services claim was not addressed in the Court's January 6 Stipulation and Order.  (Id.)

   In April 2021, Baer personally filed a letter in the action before this Court seeking an order enjoining Absolute Nevada from filing any demands in the arbitration related to his lien. (Doc 67.)  The Court denied Baer's request, (Doc 68), and on April 30, 2021, Absolute Nevada

submitted a new arbitration demand, (Doc 81, Ex. 1-A at 4 n.2.)  The application sought a ruling

that Grand Majestic and Baer waived all liens relating to the Charter, including any lien relating

to Baer's claim for alleged professional services or his seaman's wage claim.  (See Doc 80-1 at

6; Doc 81, Ex. 1-A at 6.)  After April 30, 2021, the panel did not receive any further

correspondence from Grand Majestic's counsel; all correspondence opposing the application was

submitted by Baer from his personal email account.  (Doc 81, Ex. 1-A at 4 n.2.)

In late April and May 2021, Baer repeatedly emailed the panel asserting, among

other arguments, that it did not have jurisdiction over his personal services claim.  (Doc 81, Ex.

1-A at 4-5.)  On May 25, 2021, the panel "asked Absolute Nevada to make its submissions

concerning the arbitrability of the personal services claim of lien / seaman's wage claim."  (Doc

81, Ex. 1-A at 5.)  "Absolute Nevada submitted its arguments on June 8th via email and June 9th

by submissions with attached exhibits responding to the Panel's query regarding arbitrability."

(Id.)  Baer emailed the panel on June 25 and June 30, stating he wished to submit additional

arguments in opposition to Absolute Nevada's June 9 submission regarding arbitrability; the

panel responded by email requesting Baer serve any final arguments by July 1, but he failed to

do so.  (Doc 81, Ex. 1-A at 6.)

The July 6 Award and August 5 Award:  The panel issued its July 6 Award

declaring that "Grand Majestic and/or Capt. Baer waived all liens and encumbrances against the

Vessel regarding any claims relating to the Charter."  (Doc 81, Ex. 1-A at 10.)  It also declares

that Baer's June 15, 2020 Notice of Claim of Lien was waived, that the claim of lien is invalid,

and that Baer should delete the claim of lien from the Vessel's record at the NVDC.  (Id.)

Further, the July 6 Award ordered that if Baer failed to immediately remove the claim of lien, a

copy of the award, the Court's January 6 Stipulation and Order, and related subsequent rulings

must be provided to the NVDC along with the arbitration panel's request that the NVDC delete the claim of lien.  (Id.)  The August 5 Award ordered "Grand Majestic and/or Capt. Baer" to pay Absolute Nevada a sum of attorneys' fees and arbitrators' fees.  (Doc 81, Ex. 1-B.)

Absolute Nevada's Motion to Confirm:  After Baer failed to remove his claim of lien from the record, Absolute Nevada presented copies of the July 6 Award and the related rulings of this Court and requested the NVDC delete his claim of lien.  (Doc 80-1 at 8-9.)   The NVDC informed Absolute Nevada that the Court's order was "not sufficient to remove the Notice of Claim of Lien from the record" and that pursuant to 46 CFR 67.263, "the court order is required [to] declare title to the vessel to be free and clear, or [declare] the encumbrance to be of no effect, or [order] the removal of the encumbrance from the record."  (Id. at 9 (quoting Doc 81, Ex. 8).)

In August 2021, Absolute Nevada filed its Motion to Confirm and for Other Relief, seeking confirmation of the July 6 Award and August 5 Award against Grand Majestic and Baer, jointly and severally.  (Doc 80.)  It additionally sought an order, per the NVDC's requirements, declaring Baer's lien on the Vessel to be waived and of no effect and ordering its removal from the record.  (Id.; see also Doc 83.)

This Court granted the Motion to Confirm as against Grand Majestic and stayed the motion as against Baer pending his appeal of the Court's September 1, 2020 Order adjudging him to be in civil contempt.  (Doc 91.)  After the Second Circuit affirmed the finding of contempt, (Doc 92 (Summary Order of February 7, 2022)), the Court vacated the stay, (Doc 94). Accordingly, the Motion to Confirm as against Baer is presently before the Court.

Baer's Opposition:  Baer opposes Absolute Nevada's Motion to Confirm.  He is proceeding pro se and is entitled to special solicitude.  He has filed a "Notice of Motion to

Vacate Arbitration Award" in which he expressed his intent to file a "Renewed Motion to Vacate Arbitration Award" and alongside which he filed a "Petition to Vacate Award of Arbitrator." (Doc 104 ("Motion to Vacate").)  The motion purports to challenge an arbitration award dated June 9, 2021, (Doc 104 at 1, 5, 8); however, this Court has not been made aware of an award issued on that date.  Moreover, Baer's motion makes no mention of the July 6 Award and August 5 Award that are the subject of Absolute Nevada's Motion to Confirm.  In the interest of construing his <u>pro se</u> motion liberally, the Court will treat Baer's Motion to Vacate as if it refers to the July 6 Award and August 5 Award.

<u>DISCUSSION</u>

      1.  <u>Baer Is Bound by the July 6 Award and August 5 Award.</u>

Before deciding whether the Motion to Confirm should be granted as against Baer, the Court must first determine whether Baer, who only signed the Charter as president of Grand Majestic and not in his personal capacity, is bound by the July 6 Award and August 5 Award.

Generally, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>Thomson-CSF, S.A. v. Am. Arb. Ass'n</u>, 64 F.3d 773, 776 (2d Cir. 1995) (quoting <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960)).  However, the Second Circuit has "made clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.'" <u>Id.</u> (quoting <u>McAllister Bros., Inc. v. A & S Transp. Co.</u>, 621 F.2d 519, 524 (2d Cir. 1980)).  The Circuit has recognized five theories under which nonsignatories may be bound to the arbitration agreements of others: "1) incorporation by reference; 2) assumption; 3) agency; 4)

veil-piercing/alter ego; and 5) estoppel." Id.  Because the Court concludes that Baer was bound by the arbitration under the assumption theory, it will not address the other four theories.

"[A]n agreement to arbitrate can be implied from a party's conduct in the arbitration proceedings." Parrella v. Orange Rabbit, Inc., 20 Civ. 9923, 2021 WL 4462809, at *10 (S.D.N.Y. Sept. 29, 2021) (citing Gvozdenovic v. United Air Lines, 933 F.2d 1100, 1103 (2d Cir. 1991)); see also Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 368 (2d Cir. 2003).  When a nonsignatory "participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration."  Opals on Ice Lingerie, 320 F.3d at 368; ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., 102 F.3d 677, 685 (2d Cir. 1996).  "Interpreting participation as an agreement to arbitrate serves the twin goals of the [Federal Arbitration Act]—settling disputes efficiently and avoiding protracted litigation—by ensuring participants cannot have a second bite at the apple in district court should they lose in arbitration." Parrella, 2021 WL 4462809, at *10.

In Gvozdenovic, for example, the Second Circuit held that nonsignatories were bound by an arbitration agreement because they "manifested a clear intent to arbitrate the dispute." Gvozdenovic, 933 F.2d at 1105.  Specifically, they participated "voluntarily and actively" in the arbitration process by choosing a committee to represent them and selecting counsel to represent certain individuals in the arbitration. Id. at 1103, 1005.  There was also no evidence that they objected to the process, refused to arbitrate, or attempted to seek judicial relief. Id. at 1105.

Additionally, in Parrella, a court in this District held that a nonsignatory assumed the obligation to arbitrate by "actively participat[ing] in the arbitration for nine months before challenging arbitrability." Parrella, 2021 WL 4462809, at *10.  The nonsignatory "actively

defend[ed] himself" and brought crossclaims against another nonsignatory.  Id.  Moreover, when the arbitrator "explicitly invited [him] . . . to raise a challenge to arbitrability during the arbitration," he failed to raise any such objection.  Id.  Rather, the "first challenge to the arbitrability of the contract with respect to him as an individual was made after the arbitration had terminated."  Id.

By contrast, a nonsignatory does not waive the right to object to arbitrability if it does not actively and voluntarily participate in the proceedings or it "repeatedly" or "forcefully" objects to the arbitration.  See Opals on Ice Lingerie, 320 F.3d at 368-69; In re Arb. between Promotora de Navegacion, S.A., 131 F. Supp. 2d 412, 421 (S.D.N.Y. 2000).  In addition, a nonsignatory who participates in an arbitration solely to resolve the question of arbitrability itself does not waive the right to object to arbitrability.  See Opals on Ice Lingerie, 320 F.3d at 369; see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 946 (1995).

Baer's conduct demonstrated a clear intent to arbitrate his personal services claim. As a result, he waived his right to object to the arbitrability of the dispute.  Baer "voluntarily and actively" participated in the arbitration proceedings for several months before raising the argument that his personal services claim was not subject to the arbitration.  See Gvozdenovic, 933 F.2d at 1103, 1105; Parrella, 2021 WL 4462809, at *10.

Absolute Nevada made its initial arbitration demand in early December 2019. (Doc 1, Ex. 2.)  The demand letter specifically mentioned Baer and sought to enjoin him from interfering with Absolute Nevada's use, operation, and chartering of the Vessel.  (Id.)  The demand was marked "Attn: President, Capt. J. L. Baer/Officers and Directors/Legal Department" and a copy was sent to Baer's professional email address.  (Id.)

At the January 3, 2020 conference, the arbitrators directly asked counsel for Grand Majestic if Baer's personal claim was subject to the arbitration clause. Forde expressly and unambiguously spoke on behalf of Baer, who is the president, owner, sole member, and "sole proprietor" of the company. (See Doc 26, Ex. 3; Doc 51 at 2; see also Doc 99, Ex. 4 (statements by Forde at conference referring to his client as "he").) Forde confirmed that Baer's claim was subject to the Charter's arbitration clause and explained that Baer was asserting it personally and through Grand Majestic. (Doc 26, Ex. 3.)

There is no evidence that Baer objected to Forde's statements at or around the time of the January 3 conference or that he terminated Forde for "speaking out of turn." (See Doc 85 at 5.) To the contrary, Forde remained counsel for Grand Majestic at least through April 2021, around the time that the company ceased operations. (See Doc 81, Ex. 1-A at 3, 4 n.2.) Only after Absolute Nevada moved to confirm the July 6 Award and August 5 Award – over a year and a half after the conference – did Baer claim that Forde was "mistaken." (See Doc 85 at 5.)

Baer has not submitted any evidence that he otherwise timely objected to the arbitrability of his personal services claim. The only evidence that Baer so objected comes from Absolute Nevada's submissions. For example, Vicki Porter's December 2019 affirmation suggests that Baer had asserted he was not personally subject to the arbitration. (Doc 5 ¶ 19.) Porter recounts that Baer called one of Absolute Nevada's attorneys, James Kleiner, and claimed that he (Baer) and Grand Majestic were not bound by the arbitration agreement in the Charter. (Id.)

The Court affords little weight to this fact, however. The affirmation does not annex any evidence of Baer's statement (such as a memo to file written by Kleiner or an email

from Baer asserting the same argument).  (See Doc 5.)[2]  It instead annexes an email that appears

to contradict this statement; the email reproduces a text message from Baer in which he stated,

"The contract is clear and enforceable (don't forget I wrote the charter contract)."  (Doc 5, Ex. A

at 2.)  More importantly, the Porter affirmation does not reflect any objection by Baer to the

arbitrators – Baer's statement made only to Absolute Nevada's counsel is insufficient to negate

his prior embrace of and participation in the arbitration.

   Absolute Nevada's July 1, 2020 submissions state that Baer "most recently"

argued he was not subject to the arbitration.  (See Doc 25 at 7-8; Doc 26 at 4; Doc 27 at 11.)

This appears to refer to statements Baer made during a phone call with another attorney for

Absolute Nevada, Adam Wernicke, on June 17, 2020.  (See Doc 26, Ex. 5.)  Wernicke's "Memo

to File" regarding the phone call indicates that Baer stated "[t]hat he is suing in an individual

capacity, not as [Grand Majestic].  Therefore, nothing in the arbitration is binding on him; or

even [Grand Majestic] for that matter."  (Id.)  Wernicke also notes Baer "claimed that he is not

bound by the arbitration award, and that Absolute Nevada is in breach of contract."  (Id.)  Similar

to the aforementioned Porter affirmation, these submissions and Memo to File do not reflect any

objection by Baer other than to Absolute Nevada's counsel.

   The March 25 Award describes the procedural background of the arbitration in

detail but makes no mention of any assertion by Baer that his personal services claim was not

arbitrable.  (Doc 65-4.)  The July 6 Award, which dedicates approximately 5 pages to the factual

background of the proceedings, including communications between the panel, Absolute Nevada,

and Baer, is similarly silent.  (Doc 81, Ex. 1-A.)

---

[2] (See also Doc 99 at 5 (Kleiner declaration) (stating, "In response to the arbitration demand, on December 4, 2019, Baer phoned me in my office . . . . [and] denied Grand Majestic's obligation to arbitrate," and failing to mention a claim that Baer himself was not subject to the arbitration).)

In addition to failing to timely object to Forde's statements or the arbitrability of his claim, Baer made substantive arguments to the panel related to his personal services claim. In his February 2020 affidavit, he provided a detailed account of the work he performed aboard the Vessel, despite the fact that the only remaining issue before the arbitrators was Absolute Nevada's request for attorneys' fees. The "over 100 pages of emails" Baer sent to the panel between January and March 2020 further evince his active and voluntary participation in the arbitration. The affidavit and emails also illustrate that Baer's conduct directly related to his personal claim and that his participation in the proceedings was not limited to his capacity as president of Grand Majestic or to resolving the question of arbitrability. See Opals on Ice Lingerie, 320 F.3d at 369; First Options, 514 U.S. at 946.

It appears Baer's objections began in earnest in April 2021, well after the first award was issued in March 2020 and soon after Absolute Nevada indicated it was planning to submit a new arbitration demand. Baer's April 2021 request for injunctive relief from this Court claimed that the arbitration panel did not have jurisdiction over his personal lien, that he was not a party to the arbitration, and that he "never agreed to arbitration of his already existing lien." (Doc 67.) After that point, Baer repeatedly argued his claim was not subject to the arbitration, including in emails to the panel and in his submissions to this Court. (See, e.g., Doc 81, Ex. 1-A at 4-5; Doc 85 at 5; Doc 104 at 1, 7.)

Baer's delayed objections were not "timely." See Opals on Ice Lingerie, 320 F.3d at 368; ConnTech, 102 F.3d at 685; see also Fortune, Alsweet & Eldridge, Inc. v. Daniel, 724 F.2d 1355, 1357 (9th Cir. 1983) ("It would be unreasonable and unjust to allow [the defendant] to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months, shortly before the arbitrator announced her decision."); Owen–

<u>Williams v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 907 F. Supp. 134, 137 (D. Md. 1995) ("Plaintiff, who willingly submitted these clearly arbitrable claims to arbitration and who made no protest during 19 separate days of arbitration proceedings, without a doubt waived any right he may have had to contest the agreement to arbitrate."), <u>aff'd</u>, 96-1442, 1996 WL 688219 (4th Cir. Dec. 2, 1996) (per curiam).  Moreover, when the panel gave him an explicit opportunity to raise arguments as to arbitrability before it issued the July 6 Award, he failed to do so.

Baer manifested a clear intent to arbitrate his personal services claim and waived his right to object to arbitrability.  The fact that Baer later consistently argued to the panel and this Court that the arbitrators did not have jurisdiction over his claim is irrelevant given his earlier waiver of any such objection.  The Court therefore concludes Baer is bound by the July 6 Award and August 5 Award.

2.   <u>The Court May Entertain the Motion to Confirm Against Baer.</u>

Next, the Court must determine whether it may entertain the Motion to Confirm against Baer, who was not initially a party to this action.  (<u>See</u> Doc 94.)  The Court concludes that is has personal jurisdiction over Baer for the purposes of the Motion to Confirm and that service of process was proper.[3]

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."  <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 103 (2d Cir. 2006).  An "agreement to resolve disputes by arbitration in New York constitute[s] consent to personal jurisdiction in New York."  <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos</u>, 553 F.2d 842, 844 (2d Cir. 1977); <u>see also</u> <u>Vidaplan, S.A., Inc. v. Cipriani Int'l, S.A.</u>, 06 Civ. 4930, 2006 WL 8461283, at *5 (S.D.N.Y. Aug. 7, 2006) (finding consent to personal jurisdiction in New

---

[3] Both this Court and the Second Circuit have already determined the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333.  (Doc 61 at 3-4; Doc 92 (Summary Order of February 7, 2022).)

York where parties signed an agreement that provided for arbitration in New York); In the Matter of the Arbitration Between Lauritzen Kosan Tankers and Chem. Trading, Inc., 903 F. Supp. 635, 636 (S.D.N.Y. 1995) ("[B]y merely signing the charter party, which designated New York as the site for arbitration, [petitioner] consented to personal jurisdiction in New York.").

As determined above, Baer consented to arbitrate his personal services claim under the Charter's arbitration clause as a result of his active and voluntary participation in the arbitration proceedings and by his failure to timely object to the arbitrability of his claim. The Charter's arbitration clause provided that the arbitration would take place in New York and that "judgment may be entered on an award by any court of competent jurisdiction." (Doc 1, Ex. 1 ¶ 26.) Thus, by consenting to resolve his claim by arbitration in New York, Baer consented to personal jurisdiction in New York.

In addition, service of process was proper. The Federal Arbitration Act ("FAA") "provides for a specific means of obtaining personal jurisdiction in the district agreed to by the parties." Reed & Martin, Inc. v. Westinghouse Elec. Corp., 439 F.2d 1269, 1276-77 (2d Cir. 1971). Section 9 of the FAA states that notice of a motion to confirm an arbitration award "shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as through he had appeared generally in the proceeding." 9 U.S.C. § 9. If the adverse party is not a resident of the district in which the award was made, as is the case here, "then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." Id.

In the Second Circuit, the phrase "in like manner as other process of the court" refers to Rule 4, Fed. R. Civ. P. Reed & Martin, 439 F.2d at 1277; Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A., 49 F.4th 802, 812 (2d Cir. 2022) ("Rule 4 sets forth the

basic procedures for serving process in connection with arbitral awards.")  Under Rule 4(e)(2)(B), Fed. R. Civ. P., an individual may be served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."

Absolute Nevada filed its Motion to Confirm on August 10, 2021.  (Doc 80.)  On August 10, it emailed Baer a copy of its Notice of Motion, (Doc 80), the motion itself, (Doc 80-1), and the supporting memorandum, Kleiner affidavit, and proposed order, (Doc 81; Doc 82; Doc 83; see also Doc 102, Ex. 2 (annexing the August 10 email).)  On August 12, 2021, a process server left copies of the motion and supporting documents at Baer's home address in Kentucky with a person of suitable age and discretion who resides there.  (Doc 101 at 9; Doc 84.)  Service of the Motion to Confirm was thus proper under Rule 4(e)(2)(B), Fed. R. Civ. P., and, therefore, under the FAA, 9 U.S.C. § 9.  Accordingly, the Court has personal jurisdiction over Baer with respect to the Motion to Confirm.

Even if service of process on Baer had been inadequate, the Court would still conclude it has personal jurisdiction.  In cases involving arbitration proceedings, "[c]onsiderations of fairness" may excuse improper service.  In the Matter of the Arbitration Between Lauritzen Kosan Tankers & Chem. Trading, Inc., 903 F. Supp. at 637 (quoting In the Matter of the Arbitration Between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp. Corp., 146 F.R.D. 64, 68 (S.D.N.Y. 1993)).  For example, in In the Matter of the Arbitration Between Lauritzen Kosan Tankers & Chemical Trading, the petitioner moved to confirm an arbitration award against the respondent, and the respondent raised several defenses, including ineffective service of process.  903 F. Supp. at 637.  The district court concluded that service of process on the respondent was inadequate under Rule 4, Fed. R. Civ. P., but it nevertheless

confirmed the award because the respondent "actually received notice" of the motion through its attorney and "no injustice results from giving effect to that notice." Id.; see also Merrill Lynch, 553 F.2d at 845 (finding "no unfairness result[ed] from giving effect to the notice" that the defendant's attorneys "actually received").

Here, no injustice would result from giving effect to the notice Baer actually received. As previously mentioned, Baer received the motion papers by email (a method by which Absolute Nevada and Baer had long been communicating) on August 10, 2021, and Absolute Nevada separately served him on August 12, 2021. (See Doc 102, Ex. 2; Doc 84.) He filed his opposition to Absolute Nevada's Motion to Confirm on September 3, 2021. (Doc 85.) Since then, he has affirmatively sought the relief of vacatur in this action. (Doc 104.) As the Second Circuit has stated, "it is irrational to consent to jurisdiction in a court for purposes of confirming an award but not for purposes of vacating all or part of it." D.H. Blair, 462 F.3d at 104. The reverse is equally true.

3. Baer's Motion to Intervene.

After being served with the Motion to Confirm, Baer filed several documents titled "Notice of Special Appearance." (Doc 85; Doc 88; Doc 90.) However, the Federal Rules of Civil Procedure "abolished the technical distinction between general and special appearances, converting the principal method for attacking the court's jurisdiction over the person of a defendant into a Rule 12(b)(2) motion." China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc., 882 F. Supp. 2d 579, 589-90 (S.D.N.Y. 2012) (internal quotations and alterations omitted).

Accordingly, in an Order dated September 3, 2021, this Court construed Baer's "Notice of Special Appearance" as a motion to intervene pursuant to Rule 24, Fed. R. Civ. P.[4]

---

[4] In the same Order, the Court directed the parties to respond within 14 days. (Doc 86.) Absolute Nevada responded that it had "no objection to the Court granting Baer's Motion to Intervene." (Doc 87 at 2.) The only

(Doc 86.)[5]  Since Baer became a party to this action upon being properly served with Absolute Nevada's Motion to Confirm, his subsequent motion to intervene would ordinarily be moot.  To avoid doubt, however, the Court will grant the motion as an alternative basis for personal jurisdiction.

    4.  <u>Whether Baer's Motion to Vacate Is Time Barred.</u>

Absolute Nevada urges that Baer's Motion to Vacate is time barred.  (Doc 107 at 10-11.)  Under the FAA, notice of motion to vacate an arbitration award "must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  Baer's motion claims it was timely "filed and served on the 8th of April, 2021 within three months of the Arbitration Panel's Award."  (Doc 104 at 5. <u>But see</u> <u>id.</u> at 9 (certifying that the Motion to Vacate was served by email and mail on the "8th of April, 2022").)  In fact, his motion was filed on April 8, <u>2022</u> – well over three months after the supposed June 9, 2021 award referenced in the motion.  Even construed as a motion to vacate the July 6 Award and August 5 Award, which were both rendered in 2021, the motion was filed outside the three-month window.[6]

However, Baer describes his motion as a "Renewed" motion to vacate and it appears he previously sought vacatur in a separate action in the Middle District of Florida.  (Doc 104; <u>see also</u> Doc 88).  Absolute Nevada explains that the Florida action has been dismissed and argues that Baer's Florida filings "do not qualify as a motion to vacate for purposes of tolling the three-month time bar."  (Doc 107 at 11; <u>see also</u> Doc 99-7 (Florida district court order dismissing

---

[5] submissions the Court received from either Baer or Grand Majestic within the 14 days were Baer's second and third "Notice of Special Appearance," (Doc 88, Doc 90), which were not responsive to the September 3, 2021 Order.

[5] When the Court stayed the Motion to Confirm as against Baer pending his appeal of the contempt finding, it also deferred action on the motion to intervene.  (Doc 91 at 3.)  The Court later vacated the stay, and the motion to intervene is currently pending.  (Doc 94.)

[6] If Baer's motion were construed as written, the claimed date of the motion (April 8, 2021) would precede the date of the award it seeks to vacate (June 9, 2021).

the Florida action).)  The Court declines to reach the issue of whether Baer's Motion to Vacate in this action was timely filed because it concludes that the motion fails on the merits.

5.  <u>Confirmation of the July 6 Award and August 5 Award.</u>

Under the FAA, when parties have agreed that a court may enter judgment upon an arbitration award, "any party to the arbitration may apply to the court [specified in their agreement] for an order confirming the award."  9 U.S.C. § 9.  The confirmation of an arbitration award is normally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 110 (2d Cir. 2006) (quoting <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 176 (2d Cir. 1984)).  Accordingly, the "court's function in confirming or vacating an arbitration award is severely limited."  <u>Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.</u>, 103 F.3d 9, 12 (2d Cir. 1997) (quoting <u>Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.</u>, 274 F.2d 805, 808 (2d Cir. 1960)).

The court "must grant" a motion to confirm "unless the award is vacated, modified, or corrected."  9 U.S.C. § 9; <u>Hall St. Assocs., L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 587 (2008).  An arbitrator's award is entitled to "great deference" and should be confirmed as long as there is a "barely colorable justification for the outcome reached."  <u>D.H. Blair</u>, 462 F.3d at 110; <u>Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust</u>, 729 F.3d 99, 103 (2d Cir. 2013).

The FAA sets forth four narrow grounds for vacating an award:

(1)  where the award was procured by corruption, fraud, or undue means;

(2)  where there was evident partiality or corruption in the arbitrators, or either of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  A party seeking to vacate an arbitration award has the burden of proof and "must clear a high hurdle" in order to succeed.  Willemijn Houdstermaatschappij, 103 F.3d at 12; Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F.4th 144, 160 (2d Cir. 2021), cert. denied, 142 S. Ct. 2889 (2022) (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010)).

Baer has not cleared the "high hurdle" he faces.  Beijing Shougang Mining, 11 F.4th at 160.  In a conclusory manner, he invokes each of the section 10(a) grounds but does not provide any evidence in support of his claims.  (Doc 104 at 8.)  The Court will address each section 10(a) ground in turn.

Corruption, Fraud, or Undue Means:  To vacate an award under section 10(a)(1), the movant must show it was "abundantly clear" that the award was procured through corruption, fraud, or undue means.  Kolel Beth, 729 F.3d at 104-06.  Baer's Motion to Vacate merely restates the language of the statute without elaboration: "The award was procured by corruption, fraud or other undue means."  (Doc 104 at 2, 8.)  The Court concludes that Baer has failed to meet his high burden with respect to section 10(a)(1).

Arbitrator Partiality or Corruption:  A movant seeking vacatur under section 10(a)(2) must show partiality by "clear and convincing evidence" and must demonstrate that "a reasonable person would have to conclude that an arbitrator was partial to one party to the

arbitration."  Kolel Beth, 729 F.3d at 104, 106 (emphasis added).  Though the movant need not

show proof of actual bias, "something more than the mere appearance of bias" is required.  Id. at

104 (internal quotations omitted).  Evidence of partiality "must be direct and not speculative."

Id.; see also Manny Pollak & Co. v. Shelgem Ltd., 90 Civ. 4532, 1993 WL 248804, at *1

(S.D.N.Y. June 30, 1993), aff'd sub nom. Manny Pollak & Co. v. Shelgem Ltd., 17 F.3d 1425

(2d Cir. 1994) ("An arbitration award will not be upset on a conclusory assertion that there was

some sort of relationship between an arbitrator and the other party.").

      Baer asserts "there was evident partiality or corruption in the Arbitration Panel"

and that "[t]he optics of the bias and special treatment by the panel and their obvious inability to

be impartial is abundantly clear."  (Doc 104 at 2, 7.)  He further claims that "at least one if not all

members" of the panel were "working in concert" with Absolute Nevada's attorney and that the

"circumstances surrounding the arbitrators" were "possibly criminal."  (Id. at 7.)  These

accusations are entirely conclusory, speculative, and devoid of any factual support.  Therefore,

Baer has not met his burden with respect to section 10(a)(2).

      Arbitrator Misconduct:  Baer's arguments under section 10(a)(3) are similarly

unsupported.  Misconduct occurs for purposes of section 10(a)(3) "only where there is a denial of

fundamental fairness."  Kolel Beth, 729 F.3d at 104 (internal quotations omitted).  Baer claims

his "due process rights were denied and violated" by misconduct of the arbitrators.  (Doc 104 at

2, 7.)  He first alleges the arbitrators "were guilty of misconduct in wrongly refusing to postpone

the process due to a pending claim in this court and a related appeal to the arbitration pending" in

the Second Circuit.  (Id. at 2, 7.)  Baer is correct that the panel rejected his argument that the

proceeding should be stayed, but he offers no explanation for why the panel's decision was

incorrect or amounted to misconduct or a denial of fundamental fairness.  (See Doc 81, Ex. 1-A

at 5.)  He next alleges that the arbitrators were guilty of misconduct because they "completely ignored" his demand for their recusal.  (Doc 104 at 7.)  Though the July 6 Award and August 5 Award do not mention a recusal demand, Baer also has not provided any evidence that he made such a demand.

 Exceeding of Arbitrator Powers:  The Second Circuit has "consistently accorded the narrowest of readings" to the authority to vacate arbitration awards under section 10(a)(4).  In the Matter of the Arbitration Between Andros Compania Maritima, S.A. & Marc Rich & Co., A.G., 579 F.2d 691, 703 (2d Cir. 1978); Beijing Shougang Mining, 11 F.4th at 161.  The only argument Baer offers in support of vacatur pursuant to section 10(a)(4) is that the panel "lacked jurisdiction to render the award."  (Doc 104 at 2, 7.)  Once again, he fails to explain or support his argument.  Moreover, the Court has already concluded above that Baer's personal services claim was subject to the New York arbitration.

 Baer also claims the awards are contrary to public policy.  (Id. at 2, 8.)  For a court to set aside an arbitration award on public policy grounds, "the public policy must be well defined and dominant and must be ascertained by reference to the laws and legal precedents and not from general conclusions of supposed public interests."  Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 452 (2d Cir. 2011) (citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987)); see also W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of America, 461 U.S. 757, 766 (1983).  Baer does not offer any "well defined and dominant" public policy concern or otherwise explain his assertion.  (See Doc 104 at 2, 8.)  There is no basis to conclude the July 6 Award or August 5 Award is contrary to public policy.

Meanwhile, Absolute Nevada has shown there is more than a "barely colorable justification" for the July 6 Award and August 5 Award.  See D.H. Blair, 462 F.3d at 110; Kolel Beth, 729 F.3d at 103.  The arbitration panel expressly relied on the rulings of this Court in concluding that Baer's claim was subject to the arbitration, that he was bound by the January 6 Stipulation and Order, and that he waived all liens against the Vessel.  (Doc 81, Ex. 1-A at 7-8.) The Court therefore concludes that the July 6 Award and August 5 Award – which it has already confirmed as against Grand Majestic – should be confirmed as against Baer.

CONCLUSION

The Court concludes that Baer is bound by the July 6 Award and August 5 Award and that the Court may entertain Absolute Nevada's Motion to Confirm against Baer.  The Court further concludes that Baer has failed to show that the July 6 Award and August 5 Award should be vacated pursuant to 9 U.S.C. § 10.  Baer's motion to intervene (Doc 85) and Motion to Vacate (Doc 104) are DENIED.  Absolute Nevada's Motion to Confirm (Doc 80) is GRANTED as against Baer.  A separate Order regarding Absolute Nevada's Motion for Other Relief will follow.  The Clerk is directed to terminate the motions at Doc 80, Doc 85, and Doc 104.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       December 14, 2022